375 S.E.2d 765

**Mary Larraine TRUMAN, Plaintiff Below, Appellant,**

v.

**FARMERS & MERCHANTS BANK and Charles Shortridge, Defendants Below Appellees.**

No. 17984.

Supreme Court of Appeals of West Virginia.

Nov. 23, 1988.

**134**

Michael C. Farber, Sutton, for appellant.

Dan O. Callaghan, Richwood, Timothy Ruckman, Summersville, for appellees.

MILLER, Justice:

This case is an appeal by Mary Larraine Truman from a final order of the Circuit Court of Nicholas County which granted a motion for summary judgment filed by Farmers and Merchants National Bank (F & M) and Charles Shortridge, the defendants below. The only issue on appeal is whether the trial court erred in granting summary judgment without giving Ms. Truman an opportunity through discovery to develop facts that may have made summary judgment inappropriate.

## I.

Ms. Truman was employed as a bank teller with F & M from March, 1975, until October 8, 1981, when she was fired. On Saturday, October 3, 1981, Ms. Truman worked in the drive-in facility of the bank

1. In the fall of 1983, the shortage was discovered in a savings account and was attributed to

with three other tellers. At the close of the business day, one of the employees reported a shortage of approximately $850. During the investigation of this shortage, the defendant, Charles Shortridge, learned that Ms. Truman had arrived late for work on October 3, had left the facility for approximately forty-five minutes to take her sick cat to the veterinarian, and had waited on customers out of another teller's cash drawer.

On October 8, 1981, a meeting was held between Ms. Truman and her supervisor, Charles Shortridge. At this meeting, Ms. Truman was fired. Ms. Truman contends that she was dismissed because the bank suspected she was responsible for the missing money.[1] F & M counters that Ms. Truman was terminated for tardiness, for leaving the bank during working hours without permission, and for serving customers out of a coworker's cash drawer. After her dismissal, Ms. Truman was unable to find employment commensurate with her training and education. Finally, in July, 1982, nearly nine months after her termination, Ms. Truman was hired at Foodland as a cashier.

On October 7, 1982, Ms. Truman filed a complaint against F & M and Charles Shortridge alleging wrongful discharge and defamation. The defendants answered by denying these allegations. Shortly after the complaint was filed, F & M served Ms. Truman with a set of interrogatories, which she promptly answered. When Ms. Truman served her discovery requests on F & M, a set of twenty-one interrogatories and thirteen requests for production of documents, F & M failed to respond. Accordingly, Ms. Truman filed a motion to compel discovery.

Meanwhile, utilizing Ms. Truman's answers to its interrogatories, F & M deposed the plaintiff and five other individuals. After this limited discovery, F & M moved both for summary judgment and for a protective order.

another teller.

During a hearing on these motions, F & M argued that the pleadings and depositions established that Ms. Truman was fired for violation of various bank policies; thus, there was no genuine issue of material fact regarding her discharge. Furthermore, F & M argued that there was no evidence of defamation because Ms. Truman had acknowledged in her deposition that she was not aware of any employee of F & M who had made a slanderous remark concerning her termination.

In response, Ms. Truman admitted that she left the bank during working hours and that she had worked out of another teller's cash drawer. She explained that it was common practice for two tellers to use the same drawer, and that employees frequently left the bank facility during working hours, often at the direction of the head teller. In essence, Ms. Truman contended that she was not familiar with any bank policies that her actions violated.

Regarding her defamation claim, Ms. Truman argued that she should be allowed the opportunity to discover internal memoranda in order to determine whether, as she suspected, the missing money was the motivation for her dismissal. Discovery might also allow her to determine whether the bank had slandered her by falsely accusing her of stealing the money.

## II.

In Syllabus Point 3 of *Aetna Casualty & Sur. Co. v. Federal Ins. Co.*, 148 W.Va. 160, 133 S.E.2d 770 (1963), this Court stated:

"A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law."

*Accord Brown v. Bluefield Mun. Bldg. Comm'n*, 167 W.Va. 318, 280 S.E.2d 101 (1981); *Renner v. Asli*, 167 W.Va. 532, 280 S.E.2d 240 (1981); *Floyd v. Equitable Life Assurance Soc'y*, 164 W.Va. 661, 264 S.E.2d 648 (1980); Syllabus Point 1, *Masinter v. Webco Co.*, 164 W.Va. 241, 262 S.E.2d 433 (1980). As we noted in Syllabus Point 1 of *Masinter v. Webco Co., supra:*

"Even if the trial judge is of the opinion to direct a verdict, he should nevertheless ordinarily hear evidence and, upon a trial, direct a verdict rather than try the case in advance on a motion for summary judgment."

In the instant case, the trial court granted a summary judgment motion without resolving whether Ms. Truman's discovery requests were oppressive and burdensome. This ruling was based on the pleadings, the *ex parte* discovery of F & M, and the affidavits of the defendant, Charles Shortridge, and another employee of F & M. In granting the motion, the court ruled "in light of the facts that the defendants are entitled to summary judgment, the defendants' motion for a protective order and the plaintiff's motion to compel discovery should be denied."

■ The trial court should have considered the merits of the motion for a protective order and the motion to compel discovery before addressing whether summary judgment was proper. The essential claim made on appeal is that by foreclosing any discovery on the part of Ms. Truman by failing to rule on her motion to compel discovery, she was deprived of developing her case so as to resist F & M's summary judgment motion.

We spoke to a similar, although less egregious, situation in *Board of Educ. v. Van Buren & Firestone, Architects*, 165 W.Va. 140, 144, 267 S.E.2d 440, 443 (1980), where the trial court had granted summary judgment while discovery was being pursued by the plaintiff. We concluded that the court had acted too precipitously and reversed the summary judgment order.

■ In this case, there are several material facts which Ms. Truman claims are in dispute: (1) F & M's policies regarding termination; (2) whether Ms. Truman's actions violated these policies; (3) whether Ms. Truman's discharge was prompted by the $850 cash shortage; (4) whether employees of F & M falsely accused Ms. Truman of stealing the money; and (5) whether F & M told prospective employers that Ms. Truman was fired for stealing. As we

have stated in *Hatfield v. Ellis*, 167 W.Va. 213, 215, 279 S.E.2d 414, 415 (1981): "We agree with the appellants that further development of the record is necessary for a proper disposition of this case. When, as here, facts relevant to a motion for summary judgment need to be developed by further discovery, the trial court should not grant the motion." (Citations omitted).

Since the summary judgment was premature, we address briefly the motion for a protective order. The defendants contend that Ms. Truman's discovery requests are burdensome, oppressive, and designed to embarrass the defendant, Mr. Shortridge. This assertion follows the general language of Rule 26(c) of the West Virginia Rules of Civil Procedure dealing with the right to a protective order. This rule is substantially equivalent to Rule 26(c) of the Federal Rules of Civil Procedure.[2] Thus, we find the federal case law defining "oppressive and burdensome" discovery requests persuasive. In assessing whether discovery is burdensome or oppressive, the court in *Krantz v. United States*, 56 F.R.D. 555, 557 (W.D.Va.1972), made this observation:

> "The question is not the number of interrogatories or the fact that the interrogating party is using successive methods of discovery, or even that the interrogating party already possessed the information, but whether or not, they are unduly burdensome or oppressive when viewed with relation to the case itself; are the interrogatories unreasonable under the facts and circumstances of the particular case?"

*See also Stoneybrook Tenants Ass'n, Inc. v. Alpert*, 29 F.R.D. 165 (D.Conn.1961);

*Canuso, et al. v. City of Niagara Falls*, 4 F.R.D. 362 (W.D.N.Y.1945); *Hoffman v. Wilson Line*, 7 F.R.D. 73 (E.D.Pa.1946).

It should also be noted that where objections are made to discovery requests, most courts require specific showing as to how each discovery request is burdensome, oppressive, or embarrassing unless such can be determined from the sheer volume of the request in light of the case issues. *Accord Josephs v. Harris Corp.*, 677 F.2d 985 (3d Cir.1982); *Greyhound Lines, Inc. v. Miller*, 402 F.2d 134 (8th Cir.1968); *Leumi Fin. Corp. v. Hartford Accident Indem. Co.*, 295 F.Supp. 539 (S.D.N.Y.1969); *Sherman Park Community Ass'n v. Wauwatosa Realty*, 486 F.Supp. 838 (E.D.Wis. 1980); *see generally* Rule 33(a), W.Va. R.C.P.

A review of the discovery requests does not reveal that the interrogatories and requests for production of documents were oppressive, burdensome, or designed to embarrass any of the parties.[3] They essentially sought to identify F & M's policy on teller's utilization of cash drawers and taking time off during the work day, papers pertaining to Ms. Truman's personnel evaluation, and discharge, and the names of witnesses who were familiar with the event.

For the foregoing reasons, the judgment of the Circuit Court of Nicholas County is reversed and the case is remanded.

REVERSED AND REMANDED.

---

**2.** Rule 26(c), W.Va.R.C.P., provides in pertinent part:

> *"Protective Orders.* Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the circuit court of the county where the deposition is to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense...."

**3.** The federal courts have found discovery requests to be oppressive and burdensome, but this could easily be determined by inspection of

the discovery documents. *E.g., Marshall v. Westinghouse Elec. Corp.*, 576 F.2d 588 (5th Cir. 1978) (interrogatories which sought information about 7,500 employees who were located in thirty-two different districts were unduly burdensome and oppressive); *Frost v. Williams*, 46 F.R.D. 484 (D.Md.1969) (in an ordinary rear-end collision case, plaintiff's two hundred form interrogatories were onerous and oppressive); *Krantz v. United States, supra* (in an action for an income tax refund, the government's 1,500 questions were unreasonable in light of the fact that the government already possessed the information sought).