460 S.E.2d 54

**STATE of West Virginia ex rel. ARROW CONCRETE COMPANY, a West Virginia Corporation; Arrow Industries Corporation, an Ohio Corporation; and Paul Burge, Jr., Petitioners,**

v.

**Honorable George W. HILL, Jr., Judge of The Circuit Court of Wood County, and On Target Concrete, Inc., Respondents.**

No. 22842.

Supreme Court of Appeals of West Virginia.

Submitted May 2, 1995.

Decided June 19, 1995.

Charles R. McElwee, Robinson & McElwee, Charleston, for petitioners.

Marvin W. Masters, Richard A. Monahan, Masters & Taylor, L.C., Charleston, for respondents.

McHUGH, Chief Justice:

The petitioners, Arrow Concrete Co., Arrow Industries Corp., and Paul R. Burge, Jr., seek a writ of prohibition in order to prohibit the Honorable George W. Hill, Jr., Judge of the Circuit Court of Wood County, from enforcing an order compelling the petitioners to respond to the respondent's discovery requests. The petitioners are the defendants below and the respondent, On Target Concrete, Inc., is the plaintiff below (hereinafter we will refer to the parties as plaintiff and defendants). For reasons set forth below, we decline to issue a writ of prohibition.

I.

On July 18, 1994, the plaintiff filed a four-count complaint against the defendants in the Circuit Court of Wood County alleging violations of the West Virginia Antitrust Act set forth in *W.Va.Code*, 47–18–1, *et seq.*, and alleging the common law claim of tortious interference with present and prospective business relations. The plaintiff and defen-

dants are both in the business of manufacturing, selling and/or pouring concrete and related products in the State of West Virginia.[1]

On August 11, 1994, the defendants served their joint answer to the plaintiff's complaint as well as a counterclaim which alleged that the plaintiff had misappropriated confidential commercial information and tortiously interfered with the defendants' business.

Thereafter, the plaintiff sent interrogatories and a request for production of documents to the defendants. On August 19, 1994, the defendants filed objections to the plaintiff's discovery requests. On September 6, 1994, the plaintiff filed a motion to compel discovery, a motion for leave to submit additional interrogatories, and a motion for leave to amend the complaint to assert a claim pursuant to the Unfair Practices Act set forth in *W.Va.Code*, 47–11A–1, *et seq.*

At a hearing held on September 12, 1994, the trial judge made several rulings which were subsequently memorialized in an order dated October 4, 1994. That order granted all of the plaintiff's motions and ordered that "no party hereto or their counsel shall publish or make public, beyond the necessary scope and bounds of this litigation, nor make any use beyond the necessary scope and bounds of this litigation, confidential commercial and trade secret information of any party hereto." Also in that order the trial judge ordered the defendants to respond to the plaintiff's discovery requests by October 12, 1994.[2]

On October 5, 1994, counsel for the defendants contacted counsel for the plaintiff and requested a forty-five to sixty-day extension of the October 12, 1994 deadline on the basis that an additional law firm had been recently hired to act as co-counsel for the defendants.

The plaintiff's counsel agreed to a forty-five day extension, and on October 11, 1994, the trial judge entered a proposed order acknowledging the extension of the deadline.

On November 28, 1994, the defendants served their responses to the plaintiff's discovery requests. However, the defendants unilaterally contended that their responses to the discovery requests did not waive their previous objections or prohibit them from seeking further judicial protection or intervention. Additionally, the defendants stated that they were unable to fully respond to the discovery requests because the FBI and the IRS on October 19, 1994, executed a search warrant issued by the United States Magistrate Judge for the Southern District of West Virginia and seized business books and records of the defendants. The defendants indicated that when the books and records were returned they would more fully comply with the discovery requests. Thereafter, on December 22, 1994, the defendants filed a motion for suspension, reconsideration, and rescission of the October 4, 1994 discovery order and a motion to dismiss the complaint for failure to state a claim upon which relief can be granted, or in the alternative, for judgment on the pleadings.

The plaintiff contacted the U.S. Attorney's Office in March of 1995, in order to determine whether or not a procedure existed by which it could obtain the defendants' records that were being held by the government. By a letter dated March 20, 1995, an Assistant United States Attorney informed the plaintiff that it was the policy of the office to allow the persons from whom the records were obtained access to the records. The Assistant United States Attorney further indicated that the defendants could copy the records they needed at their expense. Addition-

1. Although not specifically stated in the complaint or in the record, the plaintiff asserts in its response to the petition for a writ of prohibition which is before us that the defendants informed the plaintiff when the plaintiff started constructing its concrete plant that they would run the plaintiff out of business. When the plaintiff persisted, the defendants collected signatures for a petition that would be presented to the West Virginia Division of Environmental Protection in order to shut down the plaintiff's business. The plaintiff contends that eventually the defendants had their sales people follow the plaintiff's sales people, and when the plaintiff's sales people would be making a contract, the defendants' sales people would offer the contract at a lower price or at no cost and take the business.

2. The defendants allege that they only had eight days to respond to the plaintiff's discovery request; however, the plaintiff points out that the defendants knew at the September 12, 1994 hearing that their response was due on October 12, 1994.

ally, by telephone the U.S. Attorney's Office informed the plaintiff that the defendants' computer records were in the defendants' possession since the government had taken only copies of the computer records. Based on the above letter and conversations with the U.S. Attorney's Office, the plaintiff filed a motion to compel a more complete response to the plaintiff's discovery requests on March 24, 1995.

On March 31, 1995, the circuit court denied the defendants' December 22, 1994 motion to dismiss the plaintiff's complaint for failure to state a claim upon which relief can be granted, or in the alternative for judgment on the pleadings. The circuit court also denied defendants' motion for rescission or suspension of the October 4, 1994 discovery order. The defendants thereafter filed the petition for writ of prohibition which is now before us.

## II.

■■■ Although the petition is convoluted, it appears that the defendants are seeking a writ of prohibition for two reasons: (1) the discovery of business secrets should not be compelled since the plaintiff's complaint fails to state claims upon which relief can be granted; and (2) the discovery is not relevant and is too oppressive and burdensome and should, therefore, be limited by the trial judge. We are mindful that a writ of prohibition is rarely granted as a means to resolve discovery disputes: " 'A writ of prohibition is available to correct a clear legal error resulting from a trial court's substantial abuse of its discretion in regard to discovery orders.' Syllabus Point 1, *State Farm Mut. Auto. Ins. Co. v. Stephens,* 188 W.Va. 622, 425 S.E.2d 577 (1992)." Syl. pt. 1, *State ex rel. Erickson v. Hill,* 191 W.Va. 320, 445 S.E.2d 503 (1994).³ *See also Nutter v. Maynard,* 183 W.Va. 247, 250, 395 S.E.2d 491, 494 (1990) ("[R]eview of discovery matters is not gener-

ally appropriate through extraordinary remedies[.]"); 63A Am.Jur.2d *Prohibition* § 62 at 194 (1984) ("Ordinarily, a petition for a writ of prohibition to set aside a discovery order will be denied[.]" (footnote omitted)).

## A.

Initially, we address whether the discovery of business secrets should be compelled since the defendants allege that the plaintiff's complaint fails to state claims upon which relief can be granted. As we previously pointed out, the trial judge below denied the defendants' motion to dismiss for failure to state a claim and for judgment on the pleadings.

The defendants assert that the plaintiff has failed to allege the essential elements of each claim. Moreover, the defendants contend that a more particularized pleading is required when the complaint involves violations of the West Virginia Antitrust Act and/or the Unfair Practices Act in order to protect business secrets. *See Baim & Blank, Inc. v. Warren–Connelly Co.,* 19 F.R.D. 108, 109 (S.D.N.Y.1956) ("The modern 'notice' theory of pleading is not sufficient when employed in a complaint under the anti-trust laws.") and Honorable Charles E. Clark, *Special Pleading in the "Big Case",* 21 F.R.D. 45 (1957). *But see Hospital Building Co. v. Trustees of Rex Hospital,* 425 U.S. 738, 746, 96 S.Ct. 1848, 1853, 48 L.Ed.2d 338, 345 (1976) ("[I]n antitrust cases, where 'the proof is largely in the hands of the alleged conspirator,' . . . dismissals prior to giving the plaintiff ample opportunity for discovery should be granted very sparingly." (citation omitted)) and *Nagler v. Admiral Corporation,* 248 F.2d 319 (2d Cir.1957) (The Second Circuit Court of Appeals acknowledged that these cases are often laborious and that some judges require a more particularized pleading in this area; however, the Second Circuit

---

3. As this Court noted in *Stephens, supra* at 626 n. 4, 425 S.E.2d at 581–82 n. 4, the above rule is based on syllabus point 1 of *Hinkle v. Black,* 164 W.Va. 112, 262 S.E.2d 744 (1979):

> In determining whether to grant a rule to show cause in prohibition when a court is not acting in excess of its jurisdiction, this Court will look to the adequacy of other available remedies such as appeal and to the over-all economy of effort and money among litigants,

lawyers and courts; however, this Court will use prohibition in this discretionary way to correct only substantial, clear-cut, legal errors plainly in contravention of a clear statutory, constitutional, or common law mandate which may be resolved independently of any disputed facts and only in cases where there is a high probability that the trial will be completely reversed if the error is not corrected in advance.

declined to require a more particularized pleading and stated that if the defendant wanted more detailed information from the plaintiff about the allegations in the complaint it could seek the information through discovery.)

Indirectly, the defendants are asking this Court to address the trial court's denial of their motion to dismiss for failure to state a claim. In the syllabus of *Wilfong v. Wilfong*, 156 W.Va. 754, 197 S.E.2d 96 (1973), this Court concluded that "[t]he entry of an order denying a motion for summary judgment made at the close of the pleadings and before trial is merely interlocutory and not then appealable to this Court."[4] (footnote added). In arriving at this conclusion this Court noted:

> The principle of non-appealability in interlocutory rulings is well grounded in reason. It prevents the loss of time and money involved in piece-meal litigation and the moving party, though denied of immediate relief or vindication, is not prejudiced. The action simply continues toward a resolution of its merits following a decision on the motion. If unsuccessful at trial, the movant may still raise the denial of his motion as error on the appeal subsequent to the entry of the final order.

*Id.* at 758–59, 197 S.E.2d at 99–100. (citations omitted).

Although *Wilfong* did not directly address the denial of a motion for failure to state a claim upon which relief can be granted made pursuant to *W.Va.R.Civ.P.* 12(b)(6), the

above rationale in *Wilfong* is nevertheless applicable to a 12(b)(6) motion. *See* 15A Charles Alan Wright et al., *Federal Practice and Procedure* § 3914.1 at 493 (2d ed. 1992) ("Ordinarily the denial [of a motion to dismiss for failure to state a claim] is not appealable." (footnote omitted)); *Texaco, Inc. v. Cottage Hill Operating Co.*, 709 F.2d 452, 453 (7th Cir.1983) ("As a general rule, denials of motions to dismiss are not appealable." (citations omitted)); *Akerson v. City of Bridgeport*, 36 Conn.App. 158, 649 A.2d 796 (Ct. 1994); *School Bd. of Marion Co. v. Angel*, 404 So.2d 359 (Fla.Dist.Ct.App.1981) (Prohibition is not available to review the correctness of a judge's ruling on a motion to dismiss); *Thornton v. Hickox*, 886 P.2d 779 (Idaho 1994); *Gutierrez v. Gutierrez*, 116 N.M. 86, 860 P.2d 216 (Ct.App.1993); and *Wenzel v. Enright*, 68 Ohio St.3d 63, 623 N.E.2d 69 (1993).[5]

Although for obvious reasons the defendants resist categorizing this prohibition as an appeal of the denial of a motion to dismiss a claim for failure to state a cause of action, essentially that is what this proceeding involves. Accordingly, we hold that ordinarily the denial of a motion for failure to state a claim upon which relief can be granted made pursuant to *West Virginia Rules of Civil Procedure* 12(b)(6) is interlocutory and is, therefore, not immediately appealable. Thus, the defendants may not indirectly raise this issue by seeking a writ of prohibition in order to preclude the trial judge from compelling discovery.[6]

---

**4.** This Court, in *Wilfong*, went on to suggest that an interlocutory order which denies a motion for summary judgment or judgment on the pleadings may be certifiable to this Court under certain circumstances. *Id.* at 759, 197 S.E.2d at 100.

**5.** Although not an issue in the case before us, we note that

> [an] appeal [of a denial of a motion to dismiss for failure to state a claim] is available in a few special circumstances to protect rights that are defined as rights intended to protect against the burden of trial rather than simply to protect against the entry of judgment, but such appeals are likely to be confined to clearly defined situations. The best illustration, so long as it stands, is provided by appeals based on claims of official immunity.

Wright, *supra* at § 3914.1 at 493 (footnote omitted). Additionally, in criminal cases the appeal

of a denial of the motion to dismiss the criminal charges may be appealable in special circumstances. *See, e.g., State v. Nearhood*, 2 Neb.App. 915, 518 N.W.2d 165 (1994) (An order denying defendant's motion to dismiss the criminal charges pending against him because he has not been tried within the 180 days time requirement is a final appealable order.)

**6.** Although we decline to address the merits of the defendants' argument, we point out that this Court has held the following in syllabus point 3 of *Mandolidis v. Elkins Industries, Inc.*, 161 W.Va. 695, 246 S.E.2d 907 (1978):

> 'The trial court, in appraising the sufficiency of a complaint on a Rule 12(b)(6) motion, should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which

### B.

Finally, we discuss whether the discovery in the case before us is relevant, and, if so, whether it is too oppressive and burdensome and should, therefore, be limited by the trial judge. The defendants argue that the discovery is not relevant to the complaint. Moreover, the defendants contend that the trial judge should have limited the discovery requests of the plaintiff in the following manner: (1) the trial judge should have imposed time-period limits upon the discovery; (2) the trial judge should have imposed geographic limits upon discovery; (3) the trial judge should have denied plaintiff's discovery of the defendants' income tax returns; and (4) the trial judge should have afforded more protection to the discovery than that which was provided.

We are mindful that this Court has held the following in syllabus points 2, 3, and 4 of *State Farm Mutual Automobile Insurance Co. v. Stephens,* 188 W.Va. 622, 425 S.E.2d 577 (1992):

2. Under Rule 26(b)(1)(iii) of the West Virginia Rules of Civil Procedure, a trial court may limit discovery if it finds that the discovery is unduly burdensome or expensive, taking into account the needs of the case, the amount in controversy, limitations on the parties' resources, and the importance of the issues at stake in the litigation.

3. Where a claim is made that a discovery request is unduly burdensome under Rule 26(b)(1)(iii) of the West Virginia Rules of Civil Procedure, the trial court should consider several factors. First, a court should weigh the requesting party's need to obtain the information against the burden that producing the information places on the opposing party. This requires an analysis of the issues in the case, the amount in controversy, and the resources of the parties. Secondly, the opposing party has the obligation to show why the discovery is burdensome unless, in light of the issues, the discovery request is oppressive on its face. Finally, the court must consider the relevancy and materiality of the information sought.

4. The question of the relevancy of the information sought through discovery essentially involves a determination of how substantively the information requested bears on the issues to be tried. However, under Rule 26(b)(1) of the West Virginia Rules of Civil Procedure, discovery is not limited only to admissible evidence, but applies to information reasonably calculated to lead to the discovery of admissible evidence.

*See also* syl. pts. 3 and 4 of *Truman v. Farmers & Merchants Bank,* 180 W.Va. 133, 375 S.E.2d 765 (1988).

In *Stephens, supra,* State Farm Mutual Automobile Insurance Company (hereinafter State Farm) sought a writ of prohibition from this Court in order to prohibit the trial court from holding it in contempt for failing to comply with court-ordered discovery. State Farm contended that the discovery order in the bad faith action was oppressive and unduly burdensome. For example, the interrogatories requested State Farm to provide information on every claim filed against it nationwide since 1980 which involved allegations of bad faith, unfair trade practice violations, excess verdict claims, and inquiries from insurance industry regulators regarding State Farm's handling of claims. *Id.*

An affidavit of a State Farm employee, Gary Driscoll, stated that it would cost $40 million to produce a list of all of the bad faith claims filed against State Farm nationwide since 1980. Based on these facts, this Court

---

would entitle him to relief.' Syl. pt. 3, *Chapman v. Kane Transfer Co.,* 160 W.Va. 530, 236 S.E.2d 207 (1977) *citing Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99 [101–02], 2 L.Ed.2d 80 (1957).

When discussing the above syllabus point this Court has explained that

[a]ll that the pleader is required to do is to set forth sufficient information to outline the elements of his claim or to permit inferences to

be drawn that these elements exist. The trial court should not dismiss a complaint merely because it doubts that the plaintiff will prevail in the action, and whether the plaintiff can prevail is a matter properly determined on the basis of proof and not merely on the pleadings. *John W. Lodge Dist. Co., Inc. v. Texaco, Inc.,* 161 W.Va. 603, 605–6, 245 S.E.2d 157, 159 (1978) (citation omitted).

found that the trial court had substantially abused its discretion by compelling the above discovery since the information sought, although relevant, was unduly burdensome and oppressive. *Id.*

In the case before us, the defendants make a general assertion that they should not be compelled to respond to the discovery because the discovery involves information which is not relevant and because the discovery involves the disclosure of "highly sensitive, proprietary financial information elicited by ... a business competitor[.]" Specifically, the defendants complain in their petition about the discovery of the following information:

(1) pricing policy, price lists, and price charged since 1984 for concrete and how the prices were determined, including the use, time periods, application and conditions of discounts, escalation clauses, formula, multipliers, adjustments and labor and material indices;

(2) a list by date and identification of documents reflecting the cost of manufacturing or producing concrete for each **calendar quarter** since 1984, and the proportion of the total costs represented by labor, materials and all other cost items, both fixed and variable;

(3) the gross and net sales of concrete by **quarter** and year broken down according to all domestic sales and all foreign sales;

(4) the total dollar amount of sales of concrete **monthly** since 1984 from defendants' Parkersburg/Vienna concrete plant, **and to each customer from that plant;**

(5) the total dollar amount of sales concrete **monthly** since 1984 within West Virginia;

(6) a list of customers who have made purchases of concrete since 1984 within West Virginia from the Parkersburg/Vienna plant **and the date on which each purchase was made and the amount of each purchase;**

(7) a list of each study or report concerning the productivity of labor, including labor productivity used in any negotiations of wage or salary with employees since 1984;

(8) cost accounting policy;

(9) new entrants into the market and the productive capacity and price structure of other manufacturers of concrete since 1984; and

(10) the income tax returns of each of the two corporate defendants and the personal income tax returns of the owner of the two corporate defendants for each year since 1984.

(emphasis provided and footnote omitted).

■ As we have previously stated, "discovery is not limited only to admissible evidence, but applies to information reasonably calculated to lead to the discovery of admissible evidence." Syl. pt. 4, in relevant part, of *Stephens, supra.* Our review of the interrogatories and request for the production of documents indicates that the information requested by the plaintiff is "reasonably calculated to lead to the discovery of admissible evidence." The very nature of an antitrust action or an unfair trade practices action involves the discovery of how a business conducts itself. However, the fact that business trade secrets are being discovered does not make the information being sought less relevant.

Furthermore, the discovery does not appear oppressive on its face, and the defendants, unlike State Farm in *Stephens, supra,* have failed to demonstrate how the discovery is oppressive and unduly burdensome. With this in mind, we address the defendants' specific arguments of how the trial judge should have limited the plaintiff's discovery requests.

First, the defendants assert that the trial judge should have imposed time-period limits upon the discovery. Specifically, the defendants argue that the trial judge should have prevented the plaintiff from discovering information from 1984 until 1993 since the plaintiff was not even incorporated until 1993. The defendants contend that the information requested in the 1980's is not relevant.

■ Conversely, the plaintiff asserts that the Supreme Court of the United States has expressly rejected this argument:

The trial court further erred in its persistent exclusion of evidence relating to the pre–1938 period, on the ground that since [the petitioner] came to this country in 1938 nothing which transpired earlier could be relevant to his suit. Petitioners sought to introduce evidence that the conspiracy and monopolization alleged began in the early 1930's. . . . This evidence was clearly material to petitioners' charge that there was a conspiracy and monopolization in existence when they came into the industry, and that they were eliminated in furtherance thereof.

*Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 709–10, 82 S.Ct. 1404, 1416, 8 L.Ed.2d 777, 790 (1962) (footnote omitted). Although the plaintiff in the case before us does not specifically assert in the complaint that the monopoly started prior to its entrance in the market, common sense dictates that a comparison between how the defendants conducted business prior to plaintiff's entrance into the market with how the defendants conducted business after the plaintiff entered the market could rationally lead to the discovery of admissible evidence. Thus, the defendants have failed to show that the trial judge substantially abused his discretion by not imposing time-period limits upon the discovery.

■ Second, the defendants assert that the trial judge should have imposed geographic limits upon the discovery because the plaintiff's business is only in West Virginia whereas the defendants' business encompasses four states. The plaintiff correctly points out that the focus of the discovery is on the Parkersburg/Vienna area of West Virginia. Moreover, the plaintiff notes that *W.Va.Code*, 47–18–4 [1978] states: "The establishment, maintenance or use of a monopoly or an attempt to establish a monopoly of trade or commerce, *any part of which is within this State*, by any persons for the purpose of excluding competition or controlling, fixing or maintaining prices is unlawful." (emphasis added). Thus, information regarding the defendants' business in the other three states could rationally lead to admissible evidence regarding the existence of a monopoly which encompasses West Virginia as well as other states. The defendants have failed to show

that the trial judge substantially abused his discretion by not imposing geographic limits upon the discovery.

■ Third, the defendants assert that the trial judge should have denied the plaintiff's discovery of the defendants' income tax returns since they are not relevant. The plaintiff contends that the income tax returns are relevant since it is seeking punitive damages in its claim of tortious interference. *See C.W. Development, Inc. v. Structures, Inc.*, 185 W.Va. 462, 466, 408 S.E.2d 41, 45–46 (1991) (Recognizing the potential for recovery of punitive damages under a tortious interference claim.) *See also* syl. pt. 13, *TXO Production Corp. v. Alliance Resources Corp.*, 187 W.Va. 457, 419 S.E.2d 870 (1992), *cert. granted in part by* — U.S. ——, 113 S.Ct. 594, 121 L.Ed.2d 532 and *judgment affirmed by* — U.S. ——, 113 S.Ct. 2711, 125 L.Ed.2d 366 (1993) (The financial position of the defendant is a factor a jury may consider when determining whether to award punitive damages.) The plaintiff argues that the defendants are alter egos of one another, therefore, the wealth and financial position of the defendants are factors relevant to whether the corporate veil may be pierced. *Cf. Norfolk Southern Ry. Co. v. Maynard*, 190 W.Va. 113, 437 S.E.2d 277 (1993) and *Laya v. Erin Homes, Inc.*, 177 W.Va. 343, 352 S.E.2d 93 (1986). Whether the plaintiff will prevail on any of the aforementioned claims is not for this Court to decide. Nevertheless, we agree that the information sought could lead to the discovery of admissible evidence. Therefore, the defendants have failed to demonstrate that the trial judge substantially abused his discretion by allowing the discovery of the defendants' income tax returns.

■ Fourth, the defendants argue that the trial judge should have afforded more protection from the discovery of business and trade secrets than that which was afforded. *W.Va.R.Civ.P.* 26(c)(7) does provide that protective orders may be entered in order to prevent the disclosure of trade secrets:

Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court in which

the action is pending or alternatively, on matters relating to a deposition, the court in the district where the deposition is to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

. . . .

(7) That a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way[.]

Furthermore, this Court has outlined factors which should be considered when determining whether a protective order should be issued:

The following six-factor test should be applied in determining whether there is 'good cause' pursuant to Rule 26(c)(7) of the West Virginia Rules of Civil Procedure to issue a protective order:

(1) The extent to which the information is known outside of the defendant's business;

(2) The extent to which it is known by employees and others involved in the defendant's business;

(3) The extent of the measures taken by the defendant to guard the secrecy of the information;

(4) The value of the information to the defendant and competitors;

(5) The amount of effort or money expended by the defendant in developing the information; and

(6) The ease or difficulty with which the information could be properly acquired or duplicated by others.

Syllabus, *State ex rel. Johnson v. Tsapis*, 187 W.Va. 337, 419 S.E.2d 1 (1992).

■ As we previously pointed out, the trial judge did order that the information discovered could not go beyond the parties involved in this action. We fail to see nor do the defendants suggest how the trial judge could provide more protection to the defendants than he already has and still enable the plaintiff to acquire more information regarding its claim against the defendants. *Cf.* 4 James W. Moore, *Moore's Federal Practice* ¶ 26.27 at 26–396 (2d ed. 1995) (a trial judge must weigh the need of the party who is seeking the protective order to keep certain information secret against the need of the party who is requesting the discovery to have the information in the action.) Therefore, the defendants have not shown that the trial judge substantially abused his discretion by not entering a broader protective order.[7]

■ In conclusion, the information requested by the plaintiff is relevant to the complaint since it is "reasonably calculated to lead to the discovery of admissible evidence." Moreover, unlike State Farm in *Stephens*, *supra*, the defendants have failed to demonstrate how the information requested is oppressive and unduly burdensome. The defendants correctly point out that the trial judge has broad authority to control the discovery process:

There have been repeated expressions of concern about undue and uncontrolled discovery, and voices from this Court have joined the chorus. But until and unless there are major changes in the present Rules of Civil Procedure, reliance must be had on what in fact and in law are ample powers of the district judge to prevent abuse.

*Herbert v. Lando*, 441 U.S. 153, 176–77, 99 S.Ct. 1635, 1649, 60 L.Ed.2d 115, 134 (1979) (footnote omitted). However, this Court will not disturb the trial judge's decisions regarding discovery on a writ of prohibition unless the complaining party can show that the trial judge substantially abused his discretion. *See* syl. pt. 1, *State ex rel. Erickson v. Hill*, *supra*.

---

7. The defendants also assert that the circuit court erred in not affording the defendants a hearing on their motion to dismiss the complaint for failure to state a claim. However, the defendants fail to cite to any authority to support their contention that the circuit court should have held such a hearing. Therefore, since the issue was not adequately addressed in the defendants' petition, we decline to address this issue in this writ of prohibition. *See* syl. pt. 3, *Higginbotham v. City of Charleston*, 157 W.Va. 724, 204 S.E.2d 1 (1974), *overruled on other grounds, O'Neil v. City of Parkersburg*, 160 W.Va. 694, 237 S.E.2d 504 (1977).

**250**

Upon all of the above, we hold that the defendants have failed to show that the trial judge substantially abused his discretion when compelling discovery. Thus, the defendants' request for a writ of prohibition is denied.

Writ denied.

BROTHERTON and RECHT, JJ., did not participate.

FOX, Judge and MILLER, Retired J., sitting by temporary assignment.