IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2023 Term

_____

No. 22-0070

_____

FILED
June 8, 2023
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

CRAIG BLAIR, President of the West Virginia Senate,
ROGER HANSHAW, Speaker of the West Virginia House of Delegates, and
JAMES C. JUSTICE, II, Governor of the State of West Virginia,
Petitioners

v.

SAM BRUNETT, and
ROBERT McCLOUD,
Respondents.

_____

Appeal from the Circuit Court of Kanawha County
The Honorable Jennifer F. Bailey, Judge
Civil Action No. 21-P-340

REVERSED AND REMANDED

_____

Submitted: May 9, 2023
Filed: June 8, 2023

Joshua E. Weishart, Esq.
Morgantown, West Virginia
Bren J. Pomponio, Esq.
Mountain State Justice, Inc.
Charleston,West Virginia
Lydia C. Milnes, Esq.
Mountain State Justice, Inc.
Morgantown, West Virginia
Jeffrey G. Blaydes, Esq.
Blaydes Law, PLLC
Charleston, West Virginia
Counsel for Respondents

Patrick Morrisey, Esq.
Attorney General
Lindsay S. See, Esq.
Solicitor General
Michael R. Williams, Esq.
Senior Deputy Solicitor General
Sean M. Whelan, Esq.
Assistant Attorney General
Charleston, West Virginia
Counsel for Petitioners

Gordon L. Mowen, II, Esq.
Zachary A. Viglianco, Esq.
Ryan A. Nash, Esq.
Orndorff Mowen PLLC
Scott Depot, West Virginia
Counsel for Amicus Curiae,
National Coalition for
Public School Options

J. Zak Ritchie, Esq.
Andrew C. Robey, Esq.
Hissam Forman Donovan Ritchie PLLC
Charleston, West Virginia
Counsel for Amicus Curiae,
Mountain State Learning Solutions, Inc.

JUSTICE ARMSTEAD delivered the Opinion of the Court.

# SYLLABUS BY THE COURT

1.  "Unless an absolute right to injunctive relief is conferred by statute, the power to grant or refuse or to modify, continue, or dissolve a temporary [preliminary] or a permanent injunction, whether preventive or mandatory in character, ordinarily rests in the sound discretion of the trial court, according to the facts and the circumstances of the particular case; and its action in the exercise of its discretion will not be disturbed on appeal in the absence of a clear showing of an abuse of such discretion." Syl. Pt. 1, *Baisden v. W. Va. Secondary Schools Activities Comm'n.*, 211 W. Va. 725, 568 S.E.2d 32 (2002) (internal citation omitted).

2.  "This Court reviews the circuit court's final order and ultimate disposition under an abuse of discretion standard. We review challenges to findings of fact under a clearly erroneous standard; conclusions of law are reviewed *de novo*." Syl. Pt. 4, *Burgess v. Porterfield*, 196 W. Va. 178, 469 S.E.2d 114 (1996).

3.  "Standing is comprised of three elements: First, the party attempting to establish standing must have suffered an 'injury-in-fact'—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent and not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct forming the basis of the lawsuit. Third, it must be likely that the injury will be redressed through a favorable decision of the court." Syl. Pt. 5, *Findley v. State Farm Mut. Auto. Ins. Co.*, 213 W. Va. 80, 576 S.E.2d 807 (2002).

ARMSTEAD, Justice:

In 2021, the Legislature passed House Bill 2012 ("HB 2012") which created the West Virginia Professional Charter School Board ("PCSB"). The PCSB is tasked with authorizing and approving public charter schools.[1] Respondents Sam Brunett and Robert McCloud ("Respondents") filed a lawsuit in the Circuit Court of Kanawha County seeking a writ of mandamus and declaratory relief, or, alternatively, injunctive relief seeking to prevent the creation of public charter schools without a majority vote of the citizens of the county or counties in which the charter schools would be located. Respondents did not sue the PCSB. Instead, they named three defendants: Governor James C. Justice, II ("Governor Justice"), House Speaker Roger Hanshaw, and Senate President Craig Blair (collectively referred to as "Petitioners").

Respondents filed a motion for a preliminary injunction in the circuit court seeking to enjoin Petitioners from creating "any PCSB-authorized charter schools absent a vote of county residents." Petitioners filed a motion opposing the preliminary injunction and a motion to dismiss. By order entered on January 20, 2022, the circuit court granted Respondents' motion for a preliminary injunction and denied Petitioners' motion to dismiss. The preliminary injunction enjoined Governor Justice and his executive officers, agents, employees, and any person acting in concert or participation with them from

---

[1] West Virginia Code § 18-5G-15 (2021).

1

"further enforcement of [HB] 2012 in the creation of PCSB-authorized charter schools."[2]

Petitioners then filed the instant appeal.

Upon thorough review,[3] we conclude that Respondents lack standing to seek the preliminary injunction at issue against Governor Justice because (1) he does not have the ability to authorize public charter schools, and (2) granting injunctive relief against him does not prevent the PCSB, a nonparty in this case, from authorizing public charter schools. Therefore, we reverse the circuit court's order, dissolve the preliminary injunction, and remand for further proceedings.[4]

---

[2] The circuit court determined that it only needed to enjoin Governor Justice and that it "need not enjoin the Senate President and House Speaker." We discuss this ruling in footnote 9, *infra*.

[3] We express our appreciation for the contributions of the amici curiae who submitted briefs in this matter: National Coalition for Public School Options and Mountain State Learning Solutions, Inc.

[4] The only issue properly before the Court in this appeal is the circuit court's ruling granting the preliminary injunction against Governor Justice. While this Court generally does not review interlocutory orders, we have recognized that a party may seek review of preliminary and temporary injunctions: "*West Virginia Constitution*, article VIII, section 3, which grants this Court appellate jurisdiction of civil cases in equity, includes a grant of jurisdiction to hear appeals from interlocutory orders by circuit courts relating to preliminary and temporary injunctive relief." Syl. Pt. 2, *State ex rel. McGraw v. Telecheck Servs., Inc.*, 213 W. Va. 438, 582 S.E.2d 885 (2003).

The circuit court's January 20, 2022, order also denied Petitioners' motion to dismiss. This ruling is interlocutory and not subject to appellate review at this time. "Ordinarily the denial of a motion for failure to state a claim upon which relief can be granted made pursuant to *West Virginia Rules of Civil Procedure* 12(b)(6) is interlocutory and is, therefore, not immediately appealable." Syl. Pt. 2, *State ex re. Arrow Concrete Co.*

(continued . . .)

2

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 2019, the Legislature provided for the establishment of public charter schools in West Virginia. *See* W. Va. Code § 18-5G-1, *et seq.* Per the 2019 statute, a county's board of education was designated as the primary "authorizer" of charter schools.[5] An "authorizer" is "the entity empowered . . . to review applications, decide whether to approve or reject applications, enter into charter contracts with applicants, oversee public charter schools, and decide whether to renew or not renew charter contracts." *Id.* § 18-5G-2(2).

In 2021, the Legislature again addressed public charter schools with the passage of HB 2012, which was signed into law by Governor Justice. Through the passage of HB 2012, the PCSB was created and empowered as an additional "authorizer" of charter schools. The creation and duties of the PCSB are set forth in West Virginia Code § 18-5G-15(a) (2021):

---

*v. Hill*, 194 W. Va. 239, 460 S.E.2d 54 (1995). *See Edwards v. Stark*, 247 W. Va. 415, 419, 880 S.E.2d 881, 885 (2022) ("[O]rders denying motions to dismiss generally constitute non-appealable interlocutory orders[.]"); *W. Va. Bd. of Educ. v. Marple*, 236 W. Va. 654, 660, 783 S.E.2d 75, 81 (2015) (*quoting Hutchison v. City of Huntington*, 198 W. Va. 139, 147, 479 S.E.2d 649, 657 (1996)) ("Ordinarily, we do not review the denial of a Rule 12(b)(6) motion because it is not a final order. However, we recognize an exception to this general rule 'when the defense is in the nature of an immunity.'"). Because we find that the motion to dismiss is not subject to appellate review at this time, the sole issue we consider herein is the circuit court's ruling granting the preliminary injunction against Governor Justice.

[5] The West Virginia Board of Education was also designated as an "authorizer" under limited circumstances. § 18-5G-2(2)(C) (2019).

There is hereby created the West Virginia Professional Charter School Board which shall report directly to and be responsible to the state board, separate from the Department of Education, for carrying out its duties in accordance with this article. The mission of the board is to authorize high-quality public charter schools throughout the state that provide more options for students to attain a thorough and efficient education, particularly through schools designed to expand the opportunities for at-risk students. The Professional Charter School Board and public charter schools authorized in accordance with this article are subject to the general supervision of the state board solely for the purposes of accountability for meeting the standards for student performance required of other public school students under § 18-2E-5 of this code.

The PCSB is made up of five members who are appointed by the Governor, with the advice and consent of the Senate. *Id.* § 18-5G-15(b). The Governor may remove a PCSB member "for official misconduct, incompetence, neglect of duty, or gross immorality." *Id.* § 18-5G-15(g).

In September of 2021, Respondents, two public school teachers in West Virginia, filed a complaint in the Circuit Court of Kanawha County alleging that several entities had applied to the PCSB to operate charter schools. Respondents stated that any charter schools the PCSB authorized would be "independent free public school organizations." They argued that allowing such schools without the consent of the county voters would violate article XII, section 10 of the West Virginia Constitution.[6]

---

[6] Article XII, section 10 of the West Virginia Constitution provides: "No independent free school district, or organization shall hereafter be created, except with the
(continued . . .)

4

Respondents requested three forms of relief: (1) a writ of mandamus ordering Petitioners to permit county residents the opportunity to vote on the creation of any PCSB-authorized charter school; or, alternatively, (2) an injunction preventing the creation of any PCSB-authorized charter school absent a vote of county residents; and (3) a declaration that West Virginia Code § 18-5G-1 *et seq.* is unconstitutional. In response, Petitioners filed a motion in opposition to the preliminary injunction and a motion to dismiss pursuant to Rule 12(b)(1) and (6) of the West Virginia Rules of Civil Procedure.

The circuit court held a hearing on these motions. During the hearing, counsel for Respondents stated that "[a]t this point[,] the only requested relief is a preliminary injunction to prevent irreparable harm and protect the Constitutional right of county voters to vote on charter schools." Counsel for Petitioners argued that Respondents lacked standing, stating that

> [t]he preliminary injunction is designed to restrain [Petitioners] from taking future actions that are likely to cause irreparable harm, but the Plaintiffs even in their argument today have failed to identify any future actions that the Senate President, Speaker of the House, or the Governor - - that they wish to stop.
>
> They are objecting to the authorization of charter schools, but none of the [Petitioners] are capable of authorizing charter schools.
>
> State law makes clear [that] the [PCSB is] responsible for this, and as it stands, the Court cannot restrain the [PCSB]

consent of the school district or districts out of which the same is to be created, expressed by a majority of the voters voting on the question." W. Va. Const. art. XII, § 10.

5

from authorizing charter schools because the Plaintiffs failed to sue them.

By order entered on January 20, 2022, the circuit court granted the preliminary injunction and denied Petitioners' motion to dismiss. In granting the preliminary injunction, the circuit court rejected Petitioners' argument that Respondents' lacked standing. The circuit court determined that Governor Justice was a proper party for standing purposes because he signed HB 2012 into law, appointed the PCSB's members, and is responsible for seeing that the State's laws are "faithfully executed." Further, the circuit court found that the PCSB's participation as a named party was unnecessary.[7] While the circuit court could not directly bind the PCSB, it ordered Governor Justice to "direct [the] PCSB, under threat of removal, if necessary, to temporarily suspend the creation of PCSB-authorized charter schools to comply with the preliminary injunction." It also found that the preliminary injunction extended to the PCSB under Rule 65 of the West Virginia Rules of Civil Procedure, explaining that

---

[7] The circuit court explained this conclusion as follows:

> Because the Governor can be enjoined to effectuate [Respondents'] requested preliminary injunction—to temporarily halt further implementation of HB 2012 in the creation of PCSB-authorized charter schools—and PCSB would thus be bound by both the constitutional directive of the Governor and the scope of an injunction against the Governor as a state agency within his charge, the [c]ourt FINDS and CONCLUDES PCSB's participation as a named party to this action is unnecessary.

6

the West Virginia Rules of Civil Procedure extend the scope of the preliminary injunction to "parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them." W. Va. R. Civ. P. 65. The scope of preliminary injunction would therefore extend to [the] PCSB as a state agency within the executive charge of the Governor.

After concluding that Governor Justice was a proper party for standing purposes, the circuit court found that the four preliminary injunction factors weighed in Respondents' favor.[8] Therefore, it granted the preliminary injunction "to ENJOIN the further enforcement of [HB] 2012 in the creation of PCSB-authorized charter schools by the Governor, the Governor's executive officers, agents, or employees, and any persons acting in concert or participation with them."[9]

---

[8] In *Justice v. West Virginia AFL-CIO*, 246 W. Va. 205, 866 S.E.2d 613 (2021), we provided that courts "must consider, in 'flexible interplay,' the following four factors in determining whether to issue a preliminary injunction: (1) the likelihood of irreparable harm to the plaintiff without the injunction; (2) the likelihood of harm to the defendant with an injunction; (3) the plaintiff's likelihood of success on the merits; and (4) the public interest." *Id.* at 212, 866 S.E.2d at 620 (internal quotation omitted). The circuit court determined that each of these factors weighed in Respondents' favor.

[9] As we noted in footnote 2, the circuit court determined that the injunctive relief was only proper against Governor Justice. The circuit court explained that it

need not enjoin the Senate President and House Speaker to effectuate [Respondents'] requested preliminary injunctive relief. However, this fac[t] does not require the dismissal of the House Speaker and Senate President from this action, which is sufficiently alleged against them for purposes of [Respondents'] requested mandamus and declaratory relief.

(continued . . .)

7

After entry of the circuit court's order granting the preliminary injunction, Petitioners filed the instant appeal. This Court subsequently granted Petitioners' motion to stay the circuit court's order pending the resolution of this appeal.

## II. STANDARD OF REVIEW

Our standard of review when addressing a circuit court's ruling on injunctive relief is as follows:

> Unless an absolute right to injunctive relief is conferred by statute, the power to grant or refuse or to modify, continue, or dissolve a temporary [preliminary] or a permanent injunction, whether preventive or mandatory in character, ordinarily rests in the sound discretion of the trial court, according to the facts and the circumstances of the particular case; and its action in the exercise of its discretion will not be

Regarding the potential mandamus relief that could be directed against the Senate President and House Speaker, the circuit court provided that it was "unwilling at this stage of the proceedings to exclude the possibility that it could, consistent with its authority and separation of powers, issue an extraordinary writ against the Legislature when the law requires." (Internal quotation omitted). As we have previously observed, "our cases . . . make clear that mandamus will lie against a State official to adjust prospectively his or her conduct to bring it into compliance with any statutory or constitutional standard." *Gribben v. Kirk*, 195 W. Va. 488, 497, 466 S.E.2d 147, 156 (1995). We find it concerning that the circuit court did not identify the specific conduct that the Senate President and House Speaker could be ordered to adjust prospectively. Instead, it simply declared that it was "unwilling . . . to exclude the possibility that it could" grant mandamus relief against these parties and, accordingly, declined to dismiss them from this action. We find the circuit court's failure to identify a specific basis for keeping the Senate President and House Speaker in this case, based on a speculative and unarticulated possibility that it may, in the future, discover a basis for mandamus relief against them, to be concerning. However, issues relating to Respondents' requested mandamus relief, as well as the circuit court's interlocutory order denying the motion to dismiss filed by the Senate President and House Speaker, are not before us in the instant appeal. The only issue properly before us at this juncture is the circuit court's ruling granting injunctive relief against Governor Justice.

8

disturbed on appeal in the absence of a clear showing of an abuse of such discretion.

Syl. Pt. 1, *Baisden v. W. Va. Secondary Schools Activities Comm'n.*, 211 W. Va. 725, 568 S.E.2d 32 (2002) (internal citation omitted).

Further, "[t]his Court reviews the circuit court's final order and ultimate disposition under an abuse of discretion standard. We review challenges to findings of fact under a clearly erroneous standard; conclusions of law are reviewed *de novo*." Syl. Pt. 4, *Burgess v. Porterfield*, 196 W. Va. 178, 469 S.E.2d 114 (1996). With these standards as guidance, we consider the parties' arguments.

### III. ANALYSIS

The circuit court granted a preliminary injunction enjoining Governor Justice from "further enforcement of [HB] 2012 in the creation of PCSB-authorized charter schools[.]" The threshold issue presented in this appeal is whether Respondents had standing to seek this injunctive relief against Governor Justice. Petitioners contend that Respondents lack standing because (1) Governor Justice does not have the ability to authorize charter schools and (2) redressing Respondents' alleged injury requires an order against the PCSB, a nonparty.

After review, we agree with Petitioners and conclude that Respondents lack standing to seek the injunctive relief at issue against Governor Justice. We begin our analysis with a brief discussion of standing and then address the parties' arguments.

This Court has recognized that "Article VIII, Section 6 of the West Virginia Constitution establishes that there must be a justiciable case or controversy—a legal right

9

claimed by one party and denied by another—in order for the circuit court to have subject matter jurisdiction. In part, this means the party asserting a legal right must have standing to assert that right." *State ex rel. Healthport Techs., LLC v. Stucky*, 239 W. Va. 239, 242, 800 S.E.2d 506, 509 (2017) (footnote omitted). Similarly, this Court has held that "[i]n essence, the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or *of particular issues*." Syl. Pt. 4, in part, *Manville Personal Injury Settlement Trust v. Blankenship*, 231 W. Va. 637, 749 S.E.2d 329 (2013) (emphasis added). "[S]tanding is defined as '[a] party's right to make a legal claim or seek judicial enforcement of a duty or right.'" *Findley v. State Farm Mut. Auto. Ins. Co.*, 213 W. Va. 80, 94, 576 S.E.2d 807, 821 (2002) (*quoting Black's Law Dictionary* 1413 (7th ed.1999)).

This Court has held that:

> Standing is comprised of three elements: First, the party attempting to establish standing must have suffered an "injury-in-fact"—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent and not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct forming the basis of the lawsuit. Third, it must be likely that the injury will be redressed through a favorable decision of the court.

Syl. Pt. 5, *Findley*, 213 W. Va. 80, 576 S.E.2d 807.

We have observed that the foregoing standing test "makes clear that all three elements must be present; thus, if one element is absent, there is no standing." *State ex rel. W. Va. Univ. Hosps.-E., Inc. v. Hammer*, 246 W. Va. 122, 132, 866 S.E.2d 187, 197 (2021). Petitioners argue, and we agree, that Respondents do not meet the causation or redressability prongs of this test.

10

As set forth in *Findley*, standing requires "a causal connection between the injury and the conduct forming the basis of the lawsuit." Syl. Pt. 5, in part, *Findley*. The Supreme Court has addressed the causation element of standing and explained that "there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . the result [of] the independent action of some third party not before the court." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136 (1992) (internal citation and quotation omitted).

Respondents posit two ways in which Governor Justice is causally connected to their injury-in-fact.[10] First, they assert that Governor Justice signed HB 2012 into law despite the fact that he "was on notice, prior to signing [HB] 2012, that it had a constitutional infirmity conflicting with [article XII,] section 10." Second, Respondents argue that after Governor Justice signed HB 2012, he failed to discharge his duty to hold a special election pursuant to article XII, section 10.

---

[10] The circuit court described Respondents' injury-in-fact as follows: Respondents "have averred that [HB] 2012 permits the creation of independent school organizations in their respective counties without the consent of a majority of county voters thereby depriving [Respondents] of their constitutional right to vote afforded to them by article 12, section 10." The issue before us is whether Respondents had standing to seek injunctive relief against Governor Justice. Thus, we do not need to address the validity of Respondents' claimed injury-in fact because "[t]he focus of a standing analysis is not on the validity of the claim but instead is 'on the appropriateness of a party bringing the questioned controversy to the court.'" *Healthport*, 239 W. Va. at 243, 800 S.E.2d at 510 (*quoting Findley*, 213 W. Va. at 95, 576 S.E.2d at 822).

We conclude that neither of these arguments satisfies the causation element of our standing test. In arriving at this conclusion, we emphasize that Governor Justice's only role in relation to HB 2012 was signing it after its passage and appointing PCSB members, with the advice and consent of the Senate. W. Va. Code § 18-5G-15(b). The PCSB is statutorily empowered to approve or reject charter school applications. *Id.* § 18-5G-15(a) Governor Justice has no veto authority over the PCSB's decision to approve or reject a charter school application. Clearly, the Respondents' claimed injury is that the approval of charter schools would take place in a manner that, according to Respondents, does not comply with their interpretation of article XII, section 10 of the West Virginia Constitution. Even assuming, *arguendo*, that such approval were found to be violative of the Constitution, that approval results from decisions and action taken by the PCSB, a nonparty to this action. Because the PCSB has the statutory authority to approve or reject charter school applications, Respondents cannot meet the causation prong of our standing test because their injury is "the result [of] *the independent action of some third party not before the court.*" *Lujan*, 504 U.S. at 560, 112 S.Ct. at 2136 (emphasis added).

Additionally, we disagree with Respondents' position that causation is satisfied because Governor Justice "was on notice, prior to signing [HB] 2012, that it had a constitutional infirmity conflicting with [article XII,] section 10." To satisfy the causation element of our standing test, Respondents must demonstrate that their alleged injury is causally connected to Governor Justice. We find no support for Respondents' argument that Governor Justice's purported belief about HB 2012's constitutionality when

12

he signed it is sufficient to satisfy the causation element of our standing test. In rejecting a similar argument, the Fourth Circuit recently addressed a lawsuit brought by the parents of students with disabilities against the governor of South Carolina, and other parties, challenging a state law prohibiting school districts from using certain funds to impose COVID-19 mask mandates. *Disability Rights South Carolina v. McMaster*, 24 F.4th 893 (4th Cir. 2022). The governor signed the law and publicly defended it from claims that it was unconstitutional. The Fourth Circuit concluded that these actions were not sufficient to establish standing. *Id.* at 901. It explained that

> [t]he mere fact that a governor is under a general duty to enforce state laws does not make him a proper defendant in every action attacking the constitutionality of a state statute. The same is true with respect to the fact that [the governor] has publicly endorsed and defended the challenged statutes. Rather, in order to be a proper defendant in an action to enjoin an allegedly unconstitutional state law, the governor must have "a specific duty to enforce" that law.

*Id.* (internal quotation and citation omitted).

We find that this rationale is applicable to the present case. Assuming that Governor Justice knew HB 2012's constitutionality could be challenged at the time he signed it, such alleged knowledge does not establish causation in this case where the PCSB, a nonparty, exercises its own, independent statutory authority to approve or reject charter school applications.

Similarly, we reject Respondents' contention that causation is satisfied because Governor Justice failed to hold a special election pursuant to article XII, section 10 after signing HB 2012. Respondents' argument in this regard relates to relief in

13

mandamus—to compel Governor Justice to call a special election consonant with article XII, section 10. The purported neglect of duty to call a special election may not serve here to satisfy the causation element of standing to seek *injunctive* relief because injunctive relief stops or prevents performance of an act, it does not direct that an act be performed. Again, the narrow issue before us is whether Respondents have standing for the *injunctive* relief at issue against Governor Justice. This injunctive relief directs Governor Justice to prevent the further creation of PCSB-authorized schools, and, as discussed above, he does not possess this ability because he does not have the statutory authority to exercise control over, or override, the PCSB's statutory authority to approve or reject charter school applications. Further, HB 2012 does not provide Governor Justice with the authority to hold a special election. Thus, in seeking injunctive relief directing Governor Justice to prevent the creation of PCSB-authorized charter schools pursuant to HB 2012, his failure to hold a special election, which he is not statutorily authorized to call, does not satisfy the causation element of our standing test.

Based on the foregoing, we conclude that Respondents have not met the causation element of our standing test.[11] While this finding is sufficient to resolve this

[11] Respondents cite multiple cases in which this Court did not dismiss the Governor as a party "for lack of standing despite no evidence of any special or specific duty under the challenged statute." *See State ex rel. League of Women Voters of W. Va. v. Tomblin*, 209 W. Va. 565, 550 S.E.2d 355 (2001); *W. Va. Educ. Ass'n v. Consol. Pub. Ret. Bd.*, 194 W. Va. 501, 460 S.E.2d 747 (1995); *McGraw v. Caperton*, 191 W. Va. 528, 446 S.E.2d 921 (1994). However, we find that these cases do not address the narrow issue before us
(continued . . .)

14

appeal, we briefly note that Respondents have also failed to establish the redressability prong of our standing test.

In *Findley*, we held that "it must be likely that the injury will be redressed through a favorable decision of the court." Syl. Pt. 5, in part, *Findley*. The preliminary injunction directs Governor Justice to prevent "further enforcement of [HB] 2012 in the creation of PCSB-authorized charter schools." As discussed in our causation analysis, Governor Justice does not control the PCSB's ability to approve or reject charter school applications. Because Governor Justice does not possess this ability, the circuit court's preliminary injunction requires a party (Governor Justice) to order a nonparty (the PCSB) to cease performing a function.[12] Since Respondents' alleged injury is not, and cannot be,

in this appeal, whether Respondents' have established standing for the injunctive relief at issue. Nor do any of these cases compel the result reached in the instant case—enjoining Governor Justice from enforcing a law that would require him to exercise authority over a nonparty, the PCSB, that he does not control.

[12] The circuit court suggested two main ways in which the preliminary injunction against Governor Justice could bind the PCSB. First, the circuit court noted that Governor Justice is "empowered to direct PCSB, under threat of removal, if necessary, to temporarily suspend the creation of PCSB-authorized charter schools to comply with the preliminary injunction." While Governor Justice may remove a PCSB member "for official misconduct, incompetence, neglect of duty, or gross immorality," we do not find that this removal power is sufficient to satisfy the redressability prong of our standing test. W. Va. Code § 18-5G-15(g). The PCSB is statutorily empowered to approve charter school applications. Assuming Governor Justice followed through with the circuit court's suggestion that he remove PCSB members if they continue to authorize charter schools, new members would then be appointed. These new members would possess their own, independent statutory authority when deciding whether to approve charter school applications. Thus, we conclude that Governor Justice's potential use of his limited

(continued . . .)

15

directly redressed through the circuit court's preliminary injunction against Governor Justice, we easily conclude that Respondents' have not satisfied the redressability prong of our standing test.

In conclusion, we find that Respondents have not satisfied the causation or redressability prongs of our standing test as set forth by this Court in *Findley*. Because Respondents do not have standing for the injunctive relief at issue against Governor Justice, we reverse the circuit court's order and dissolve the preliminary injunction.

## IV. CONCLUSION

Accordingly, for the reasons stated above, we find that the circuit court erred by granting the preliminary injunction against Governor Justice. We reverse the circuit

---

removal power under West Virginia Code § 18-5G-15(g) does not change the fact that the PCSB, not Governor Justice, has the ability to authorize public charter schools.

We also reject the circuit court's conclusion that the preliminary injunction extends to the PCSB under Rule 65 of the West Virginia Rules of Civil Procedure. Rule 65(d) provides that an order granting an injunction is "binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise." W. Va. R. Civ. P. 65(d), in part. The circuit court found that the PCSB, as a state agency, is "within the executive charge of the Governor." We disagree. Generally, an agent "acts for and represents the principal, and acquires authority from him[.]" *State ex rel. Clark v. Blue Cross Blue Shield of W. Va., Inc.*, 203 W. Va. 690, 714, 510 S.E.2d 764, 788 (1998). The PCSB does not act on behalf of Governor Justice. The PCSB did not acquire its authority to authorize charter schools from Governor Justice. The PCSB was created by statute and acts pursuant to its statutory authority. Governor Justice cannot direct or veto the PCSB's decision to approve a charter school application. Thus, we find the circuit court's reliance on Rule 65(d) to be misplaced.

16

court's January 20, 2022 order, dissolve the preliminary injunction, and remand the case for further proceedings.

Reversed and Remanded.