711 S.E.2d 542

Betty JARVIS, Plaintiff Below, Appellee

v.

WEST VIRGINIA STATE POLICE, D.M.
Nelson, A.S. Perdue, and C.E. Akers,
Defendants Below, Appellants

and

Wanda Carney, Plaintiff Below, Appellee

v.

West Virginia State Police, D.M. Nelson,
A.S. Perdue, and C.E. Akers, Defendants
Below, Appellants.

No. 35444.

Supreme Court of Appeals of
West Virginia.

Submitted Sept. 8, 2010.

Decided Nov. 18, 2010.

Michael D. Mullins, Esq., Robert L. Bailey, Esq., Steptoe & Johnson, Charleston, WV, for Appellants.

Lonnie C. Simmons, Esq., Robert M. Bastress, III, Esq., DiTrapano, Barrett & Dipiero, Charleston, WV, for Appellees.

BENJAMIN, Justice:

The appellants, West Virginia State Police and State Troopers D.M. Nelson, A.S. Perdue, and C.E. Akers, appeal the August 4, 2009 order of the Circuit Court of Kanawha County that denied the appellants' motion to dismiss a complaint filed against them by the appellees, Betty Jarvis and Wanda Carney, alleging claims for retaliatory prosecution and negligence. For the reasons explained below, we reverse the circuit court's order.

## I.

### FACTS

In 2004, the West Virginia State Police, an appellant herein, began conducting a major drug enforcement investigation in Mingo County. In connection with the investigation, Carla Collins became a cooperative witness for the state police. Subsequently, Ms. Collins was killed and her body was discovered in a makeshift grave near an abandoned trailer. It was later determined that Valerie Friend murdered Ms. Collins in April 2005, at the direction of George "Porgie" Lecco.

The federal government charged several individuals with various crimes in connection with Ms. Collins' murder including George Lecco, Valerie Friend, and Walter Harmon. Mr. Harmon was represented by Lawyer Michael T. Clifford. Mr. Clifford employed Appellee Wanda Carney as an investigator. Appellee Betty Jarvis, an aunt of Mr. Harmon, offered to assist Mr. Clifford and Ms. Carney in connection with providing a defense for her nephew.

As part of Ms. Carney's investigation, she spoke to Carmella Blankenship and Valerie Friend. Both women told Ms. Carney that

Mr. Harmon was not present at the murder of Ms. Collins. Ms. Carney also learned from her investigation that the police were allegedly involved in the drug trafficking under investigation and that State Trooper D.M. Nelson, an appellant herein, was rumored to have had a sexual relationship with Ms. Collins.

The State subsequently indicted Ms. Carney and Ms. Jarvis for obstructing a police officer and conspiracy to obstruct a police officer. The evidence the State relied upon in obtaining an indictment and at trial was that the two women had hindered the police investigation into Ms. Collins' murder by removing Carmella Blankenship from Mingo County and thereby delaying a police interview with Ms. Blankenship. The State further alleged that the appellees made derogatory remarks about the police to a material witness, Alola Boseman, that affected Ms. Boseman's ability to trust the police. Finally, it was alleged by the State that the appellees committed trespass and removed certain items having relevance to the case from the house where Ms. Friend resided prior to the murder.

In September 2006, a jury convicted Ms. Carney and Ms. Jarvis of obstruction and conspiracy to commit obstruction. The two women appealed to this Court, and in *State v. Carney,* 222 W.Va. 152, 663 S.E.2d 606 (2008), this Court reversed the convictions due to insufficiency of the evidence. This Court found that the obstruction statute requires that the defendant's conduct be either with force or unlawful. Upon application of the statute to the evidence below, the Court determined that Ms. Carney's and Ms. Jarvis's conduct was not unlawful. With regard to the alleged derogatory comments made by the women, this Court found that the comments were protected speech for which the appellees could not be prosecuted.

After the reversal of their convictions, the appellees brought in Kanawha County Circuit Court claims for retaliatory prosecution and negligence against the West Virginia State Police and State Troopers D.M. Nelson, A.S. Perdue, and C.E. Akers. With regard to the retaliatory prosecution claim, the appellees assert that their arrest and conviction was in retaliation for exercising their constitutional rights.[1]

The appellants thereafter moved to dismiss the complaints on the basis that the appellees failed to state a cognizable constitutional tort claim for retaliatory prosecution. The appellants also argued that they cannot be held liable under the doctrine of qualified immunity. Finally, the appellants posited that the appellees have no cognizable claim for negligence.

In its August 4, 2009 order, the circuit court denied the appellants' motion to dismiss. The appellants now appeal the circuit court's order.

## II.

### STANDARD OF REVIEW

This appeal arises from the circuit court's denial of a motion to dismiss pursuant to Rule 12(b)(6) of the West Virginia Rules of Civil Procedure. "Ordinarily the denial of a motion for failure to state a claim upon which relief can be granted made pursuant to *West Virginia Rules of Civil Procedure* 12(b)(6) is interlocutory and is, therefore, not immediately appealable." Syllabus Point 2, *State ex rel. Arrow Concrete Co. v. Hill,* 194 W.Va. 239, 460 S.E.2d 54 (1995). However, in Syllabus Point 2 of *Robinson v. Pack,* 223 W.Va. 828, 679 S.E.2d 660 (2009), this Court held that "[a] circuit court's denial of summary judgment that is predicated on qualified immunity is an interlocutory ruling which is subject to immediate appeal under the 'collat-

---

1. In their retaliatory prosecution claim, the appellees allege that the appellants' actions violated rights guaranteed by the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the federal constitution. This Court recognized a cause of action for such a claim in Syllabus Point 2 of *Hutchison v. City of Huntington,* 198 W.Va. 139, 479 S.E.2d 649 (1996) where we held:

Unless barred by one of the recognized statutory, constitutional or common law immunities, a private cause of action exists where a municipality or local governmental unit causes injury by denying that person rights that are protected by the Due Process Clause embodied within Article 3, § 10 of the West Virginia Constitution.

eral order' doctrine."[2] Because the instant order denying a motion to dismiss is an interlocutory order that is predicated in part on qualified immunity, we find that the order is subject to immediate appeal under our holding in *Robinson*. We will review the order to dismiss under a *de novo* standard. *See* Syllabus Point 4, *Ewing v. Board of Educ.*, 202 W.Va. 228, 503 S.E.2d 541 (1998) ("When a party, as part of an appeal from a final judgment, assigns as error a circuit court's denial of a motion to dismiss, the circuit court's disposition of the motion to dismiss will be reviewed *de novo*.").

## III.

### DISCUSSION

#### A. Failure to state cognizable claim for retaliatory prosecution

On appeal to this Court, the appellants assign error in the circuit court's failure to hold that a plaintiff alleging retaliatory prosecution against the police must allege and prove lack of probable cause to prosecute. The circuit court, in finding that the appellees have asserted a viable state constitutional tort claim, applied *Mt. Healthy City Board of Ed. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). *Mt. Healthy* is an employment case in which the plaintiff alleged adverse conduct for exercising his rights un-

der the First and Fourteenth Amendments. In that case, the Supreme Court explained:

> [T]he burden [is] properly placed upon [plaintiff] to show that his conduct was constitutionally protected, and that this conduct was a substantial factor-or, to put it in other words, that it was a motivating factor in the Board's decision not to rehire him. [Plaintiff] having carried that burden, however, ... the Board had [to show] by a preponderance of the evidence that it would have reached the same decision as to [plaintiff's] reemployment even in the absence of the protected conduct.

429 U.S. at 287, 97 S.Ct. 568 (footnote and quotations omitted). According to the circuit court below, under *Mt. Healthy* the appellees must prove that the they exercised their constitutionally protected free speech rights; a substantial or motivating factor for the appellants to pursue the criminal prosecution of the appellees was based upon the appellees' exercise of free speech; and as a proximate cause of the appellants' actions, the appellees suffered damages. To defend such a claim, the circuit court found that the appellants may show that the appellees would have been prosecuted in the absence of the alleged protected conduct. Applying this standard, the circuit court concluded that it could not dismiss the appellees' claims at this stage in the proceedings.

**2.** This Court explained in *Robinson*, 223 W.Va. at 832, 679 S.E.2d at 664, that the "collateral order" doctrine

> was set forth by the United States Supreme Court in *Cohen* [*v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949)].... In *Durm* [*v. Heck's, Inc.*], 184 W.Va. at 566 n. 2, 401 S.E.2d at 912 n. 2 [(1991)], we noted the doctrine as an exception to the federal interpretation of Rule 54(b), and we said that under *Cohn* [*Cohen*], "[a]n interlocutory order would be subject to appeal under this doctrine if it '(1) conclusively determines the disputed controversy, (2) resolves an important issue completely separate from the merits of the actions, and (3) is effectively unreviewable on appeal from a final judgment.'" (Citations omitted).

We further discussed in *Robinson* why the collateral order doctrine applies to cases involving claims of qualified immunity:

> With regard to the first factor of *Cohen* ... [b]ecause a ruling denying the availability of immunity fully resolves the issue of a litigant's

obligation to participate in the litigation, the first factor of *Cohen* is easily met. As to the second factor which focuses on whether the immunity ruling resolves significant issues separate from the merits, there is little question that the claim of immunity is conceptually distinct from the merits of the plaintiff's claim that his or her rights have been violated....

> The final factor of the *Cohen* test requires us to consider whether a qualified immunity ruling is effectively unreviewable at the appeal stage. Postponing review of a ruling denying immunity to the post-trial stage is fruitless ... because the underlying objective in any immunity determination (absolute or qualified) is immunity from suit. Traditional appellate review of a qualified immunity ruling cannot achieve the intended goal of an immunity ruling: the right not to be subject to the burden of trial. As a result, the third factor of *Cohen* is easily met.

*Robinson*, 223 W.Va. at 832–833, 679 S.E.2d at 664–665 (internal quotations, brackets, and citations omitted).

It is the appellants' position that the test applicable to retaliatory prosecution cases like the instant one is found in *Hartman v. Moore*, 547 U.S. 250, 126 S.Ct. 1695, 164 L.Ed.2d 441 (2006) (hereinafter *"Hartman"*), not in *Mt. Healthy*. In *Hartman*, the plaintiff brought an action pursuant to *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971),[3] against criminal investigators for inducing prosecution in retaliation for speech. In *Hartman*, the respondent and plaintiff below, William G. Moore, Jr., was the chief executive of a company that manufactured a multiline optical character reader for interpreting multiple lines of text. Mr. Moore tried to persuade the U.S. Postal Service to adopt his multiline technology to read and sort mail, but he was initially rebuffed. As a result, Mr. Moore lobbied members of Congress and supported a "Buy American" rider to the Postal Service's 1985 appropriations bill. Notwithstanding alleged requests by the Postmaster General to be quiet, Mr. Moore hired a public relations firm to further his efforts. Subsequently, Mr. Moore was investigated by Postal Service inspectors and ultimately indicted by federal prosecutors for conspiracy to defraud the United States, theft, receiving stolen property, and mail wire fraud. At the close of the government's case, the district court concluded that there was a complete lack of direct evidence connecting Mr. Moore to any of the criminal wrongdoing alleged, and it granted his motion for acquittal.

Thereafter, Mr. Moore brought his *Bivens* claim[4] in which he alleged, *inter alia*, that the prosecutor and the inspectors had engineered his criminal prosecution in retaliation for criticism of the Postal Service, thus violating the First Amendment. The question before the Supreme Court in *Hartman* was whether Mr. Moore's complaint stated an actionable violation of the First Amendment without alleging an absence of probable cause to support the underlying criminal charge.

The Court found that retaliatory prosecution cases differ from ordinary retaliatory claims in two significant respects, and held that plaintiffs alleging retaliatory prosecution are required to show as an element of their action the absence of probable cause, which must be pleaded and proven. First, the Court found that requiring a showing of an absence of probable cause is justified because in retaliatory prosecution cases, in contrast to ordinary retaliation claims, the absence or presence of probable cause provides important circumstantial evidence which can prove or disprove retaliatory causation. The Court explained:

> When the claimed retaliation for protected conduct is a criminal charge ... a constitutional tort action will differ from [the standard retaliation case] in two ways. Like any other plaintiff charging official retaliatory action, the plaintiff in a retaliatory-prosecution claim must prove the elements of retaliatory animus as the cause of injury, and the defendant will have the same opportunity to respond to a prima facie case by showing that the action would have been taken anyway, independently of any retaliatory animus. What is different about a prosecution case, however, is that there will always be a distinct body of highly valuable circumstantial evidence available and apt to prove or disprove retaliatory causation, namely evidence showing whether there was or was not probable cause to bring the criminal charge. Demonstrating that there was no probable cause for the underlying criminal charge will tend to reinforce the retaliation evidence and show that retaliation was the but-for-basis for instigating the prosecution, while establishing the existence of probable cause will suggest that prosecution would have occurred even without a retaliatory motive. This alone does not mean, of course, that a *Bivens* or § 1983 plaintiff should be required to plead and prove no probable cause, but it does mean that litigating probable cause will be highly

---

**3.** *"Bivens* established that the victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute confer-

ring such a right." *Carlson v. Green*, 446 U.S. 14, 18, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980).

**4.** *See* n. 2, *supra*.

likely in any retaliatory-prosecution case, owing to its powerful evidentiary significance.

*Hartman*, 547 U.S. at 260–261, 126 S.Ct. 1695 (footnote omitted). Further, because the presence or absence of probable cause is such a significant factor in any retaliatory prosecution case and almost certain to be raised by one of the parties to the action, the Court found that making the absence of probable cause an element of proving such a claim is cost free to the plaintiff.

Our sense is that the very significance of probable cause means that a requirement to plead and prove its absence will usually be cost free by any incremental reckoning. The issue is so likely to be raised by some party at some point that treating it as important enough to be an element will be a way to address the issue of causation without adding to time or expense.

547 U.S. at 265, 126 S.Ct. 1695 (citation omitted).

■■■■ Second the Court recognized that in retaliatory prosecution cases, unlike in ordinary retaliation cases, the person with the alleged retaliatory animus generally is not the person who made the decision to prosecute. The Court explained this point as follows:

The second respect in which a retaliatory-prosecution case is different also goes to the causation that a *Bivens* plaintiff must prove; the difference is that the requisite causation between the defendant's retaliatory animus and the plaintiff's injury is usually more complex than it is in other retaliation cases, and the need to show this more complex connection supports a requirement that no probable cause be alleged and proven. A *Bivens* (or § 1983) action for retaliatory prosecution will not be brought against the prosecutor, who is absolutely immune from liability for the decision to prosecute.[5] Instead, the defendant will be a nonprosecutor, an official, like an inspector here, who may have influenced the prosecutorial decision but did not himself make it, and the cause of action will not be strictly for retaliatory prosecution, but for successful retaliatory inducement to prosecute. The consequence is that a plaintiff like Moore must show that the nonprosecuting official acted in retaliation, and must also show that he induced the prosecutor to bring charges that would not have been initiated without his urging.

Thus, the causal connection required here is not merely between the retaliatory animus of one person and that person's own injurious action, but between the retaliatory animus of one person and the action of another.

Herein lies the distinct problem of causation in cases like this one. Evidence of an inspector's animus does not necessarily show that the inspector induced the action of a prosecutor who would not have pressed charges otherwise. Moreover, to the factual difficulty of divining the influence of an investigator or other law enforcement officer upon the prosecutor's mind, there is an added legal obstacle in the longstanding presumption of regularity accorded to prosecutorial decisionmaking.[6]

*Litigation Handbook on West Virginia Rules of Civil Procedure*, § 8(c), at 213 (3d ed.2008) (additional citations omitted).

---

5. Prosecutors in West Virginia also enjoy absolute immunity under our common law. We recently described this immunity as follows:

Prosecutors enjoy absolute immunity from civil liability for prosecutorial functions such as, initiating and pursuing a criminal prosecution, presenting a case at trial, and other conduct that is intricately associated with the judicial process. . . . It has been said that absolute prosecutorial immunity cannot be defeated by showing that the prosecutor acted wrongfully or even maliciously, or because the criminal defendant ultimately prevailed on appeal or in a habeas corpus proceeding.

*Mooney v. Frazier*, 225 W.Va. 358, 370 n. 12, 693 S.E.2d 333, 345 n. 12 (2010), *quoting* Franklin D. Cleckley, Robin J. Davis, & Louis J. Palmer, Jr.,

6. Under our law, "[a] public official, in the performance of official duties imposed upon him by law, is presumed to have done his duty and to have acted in good faith and from proper motives until the contrary is shown." *State v. Professional Realty Co.*, 144 W.Va. 652, 662–663, 110 S.E.2d 616, 623 (1959) (citations omitted). Also, this Court has held that "[t]he legal presumption is that every prosecution for crime is founded upon probable cause and is instituted for the purpose of justice." Syllabus Point 4, in part, *McNair v. Erwin*, 84 W.Va. 250, 99 S.E. 454 (1919).

479

And this presumption that a prosecutor has legitimate grounds for the action he takes is one we do not lightly discard, given our position that judicial intrusion into executive discretion of such high order should be minimal.

Some sort of allegation, then, is needed both to bridge the gap between the non-prosecuting government agent's motive and the prosecutor's action, and to address the presumption of prosecutorial regularity. And at the trial stage, some evidence must link the allegedly retaliatory official to a prosecutor whose action has injured the plaintiff. The connection, to be alleged and shown, is the absence of probable cause.

547 U.S. at 261–263, 126 S.Ct. 1695 (citations and footnotes omitted and footnotes added).

■ In their brief to this Court, the appellees set forth several arguments in favor of rejecting the analysis conducted in *Hartman* and to apply the test utilized by the circuit court from *Mt. Healthy* and its progeny to retaliatory prosecution cases. We find these arguments to be unavailing. Instead, this Court finds the reasoning in *Hartman* to be persuasive, and we adopt its requirement of a showing of no probable cause in a retaliatory prosecution action.

In addition, we find that a showing of an absence of probable cause is consistent with this Court's test for proving malicious prosecution, a cause of action similar to retaliatory prosecution. *See Musso–Escude v. Edwards,* 101 Wash.App. 560, 4 P.3d 151, 158 n. 53 (2000) (noting that "[r]etaliatory prosecution is an actionable form of malicious prosecution[.] (Citations omitted)).[7] Specifically, in a retaliatory prosecution claim the malicious intent involved in bringing the action against the plaintiff is the intent to punish the plaintiff for the exercise of his or her constitutional rights. Thus, the similarity between the two causes of action compels that they have similar elements. Further, this Court believes that bringing an action alleging retaliatory criminal prosecution action should re-

quire more than bringing a retaliation claim for adverse action occurring in a noncriminal context. This is due to the fact that criminal prosecutions should be encouraged in appropriate cases "without fear of reprisal by civil actions, criminal prosecutions being essential to the maintenance of an orderly society." *Reilly v. Shepherd,* 273 Va. 728, 643 S.E.2d 216, 218–219 (2007) (citation omitted). Finally, we have held that "[t]he public policy favors prosecution for crimes and requires the protection of a person who in good faith and upon reasonable grounds institutes proceedings upon a criminal charge. The legal presumption is that every prosecution for crime is founded upon probable cause and is instituted for the purpose of justice." Syllabus Point 4, *McNair v. Erwin,* 84 W.Va. 250, 99 S.E. 454 (1919).

■ Therefore, for the reasons stated above, we now hold that a plaintiff who brings a cause of action alleging that he or she was criminally prosecuted in retaliation for exercising a right protected by the state or federal constitution must plead and prove as an element of his or her cause of action that there was an absence of probable cause to support the criminal charge.

It is the appellees' position that in the event this Court follows *Hartman,* the presence or absence of probable cause is a fact question that should be presented to a jury. For support, the appellees cite *Moore v. Hartman,* 571 F.3d 62 (D.C.Cir.2009) (hereinafter *"Moore v. Hartman"*), in which the court held that in the context of a retaliatory prosecution claim, an indictment merely is *prima facie* evidence of probable cause which may be rebutted. According to the appellees, there are at least two critical reasons why they should be permitted to present their case to a jury. First, this Court held in *State v. Carney, supra,* that the evidence was insufficient as a matter of law to support a charge of obstructing a police officer. Second, the appellees should be permitted to develop all relevant facts to prove there was

---

7. With regard to malicious prosecution, this Court held in Syllabus Point 1 of *Lyons v. Coal Co.,* 75 W.Va. 739, 84 S.E. 744 (1915), that in order "[t]o maintain an action for malicious prosecution it is essential to prove (1) that the prosecution was malicious, (2) that it was without reasonable or probable cause, and (3) that it terminated favorably to plaintiff."

480

no probable cause justifying the criminal prosecution in this case.

In *Moore v. Hartman,* the Court of Appeals for the District of Columbia discussed what presumption a grand jury indictment is afforded in a retaliatory prosecution claim as follows:

[S]everal of our sister circuits have held that a grand jury indictment is prima facie evidence of probable cause which may be rebutted. *See, e.g., White v. Frank,* 855 F.2d 956, 961–62 (2d Cir.1988) ("[T]hough an indictment by a grand jury is generally considered prima facie evidence of probable cause in a subsequent civil action for malicious prosecution, this presumption may be rebutted by proof that the defendant misrepresented, withheld, or falsified evidence."); *see also Gonzalez Rucci v. INS,* 405 F.3d 45, 49 (1st Cir.2005) (generally an indictment establishes probable cause, but there is an exception if law enforcement officers knowingly presented false testimony to the grand jury); *Rothstein v. Carriere,* 373 F.3d 275, 282–83 (2d Cir.2004) (grand jury indictment creates presumption of probable cause; may be rebutted if plaintiff "establish[es] that the indictment was produced by fraud, perjury, the suppression of evidence or other police misconduct undertaken in bad faith"); *Riley v. City of Montgomery, Alabama,* 104 F.3d 1247, 1254 (11th Cir.1997) ("[A]n indictment is prima facie evidence of probable cause which can be overcome by showing that it was induced by misconduct."); *Rose v. Bartle,* 871 F.2d 331, 353 (3d Cir.1989) (grand jury indictment "constitutes prima facie evidence of probable cause to prosecute, but . . . may be rebutted by evidence that the presentment was procured by fraud, perjury or other corrupt means"); *Hand v. Gary,* 838 F.2d 1420, 1426 (5th Cir.1988) ("obtaining an indictment is not enough to insulate state actors from an action for malicious prosecution under § 1983" when "finding of probable cause remained tainted by the malicious actions of the government officials"); *Harris v. Roderick,* 126 F.3d 1189, 1198 (9th Cir.1997) (same; explicitly adopts reasoning of *Hand* ). *Cf. Awabdy v. City of Adelanto,* 368 F.3d 1062, 1067

(9th Cir.2004) (in a later civil action for malicious prosecution, a judicial finding of probable cause in a criminal proceeding is prima facie evidence of probable cause which may be rebutted by a "showing that the criminal prosecution was induced by fraud, corruption, perjury, fabricated evidence, or other wrongful conduct undertaken in bad faith"); *Hinchman v. Moore,* 312 F.3d 198 (6th Cir.2002) (a judicial finding of probable cause in·a criminal proceeding does not bar a future malicious prosecution claim where plaintiff alleges the police officer supplied false information to establish probable cause); *DeLoach v. Bevers,* 922 F.2d 618, 620–21 (10th Cir. 1990) (despite judicial determination of probable cause, police officer "cannot hide behind the decisions of others involved in [plaintiff's] arrest and prosecution if she deliberately conceals and mischaracterizes exculpatory evidence").

571 F.3d at 67. The *Moore v. Hartman* court joined its sister courts and determined that in a retaliatory prosecution claim, a grand jury indictment is prima facie, rather than conclusive, evidence of probable cause which may be rebutted.

■ This Court is persuaded by the weight of federal authority on this issue. Therefore, we now hold that in a claim for retaliatory prosecution in which a plaintiff alleges that he or she was criminally prosecuted in retaliation for exercising a right protected by the state or federal constitution, a grand jury indictment is prima facie evidence of probable cause for the underlying criminal prosecution, and a plaintiff may rebut this evidence by showing that the indictment was procured by fraud, perjury, or falsified evidence. In light of this rule, it is the position of the appellees that we should remand this case to the circuit court to give the appellees the opportunity to develop evidence to rebut the prima facie showing of probable cause. We disagree.

■ Significantly, the appellees were not only indicted but also convicted of the charges against them. This Court has held, with regard to malicious prosecution actions, that,

A judgment of conviction ... although reversed on writ of error and the accused discharged from further prosecution on remand of the case, is conclusive evidence of probable cause for believing the accused guilty of the offense charged to him, unless the conviction was procured by fraud; and on plaintiff in an action for malicious prosecution devolves the duty of averring and by convincing proof showing such fraud by other undue means.

Syllabus Point 1 of *Haddad v. Railway Co.*, 77 W.Va. 710, 88 S.E. 1038 (1916). This point of law applies to the instant case. The appellees were convicted at trial of one count each of obstruction of a police officer and conspiracy to commit obstruction and this Court subsequently reversed the convictions. Under our law, this is conclusive evidence of probable cause for believing the appellees guilty of the offenses charged against them.[8]

In sum, because the appellees are unable to prove the absence of probable cause in their criminal prosecutions, they are unable to state a claim for retaliatory prosecution upon which relief can be granted. Therefore, we find that the circuit court erred in denying the appellants' motion to dismiss the appellees' complaints, and we reverse the circuit court's order as to the appellees' causes of action for retaliatory prosecution.

### B. Failure to state cognizable claim for negligence

■■■■■■ The final issue which this Court must address is whether the appellees stated a cognizable claim for negligence in their complaint. In its order, the circuit court found that while qualified immunity is a defense to the alleged violation of a constitutional right, it is not a defense to a claim of simple negligence. The circuit court recognized that this Court has applied qualified immunity to individual defendants where no constitutional rights violations were alleged, but rejected this precedent.[9] Again, we find that the circuit court erred. This Court held in Syllabus Point 6 of *Clark v. Dunn*, 195 W.Va. 272, 465 S.E.2d 374 (1995):

In the absence of an insurance contract waiving the defense, the doctrine of qualified or official immunity bars a claim of mere negligence against a State agency not within the purview of the West Virginia Governmental Tort Claims and Insurance Reform Act, W. Va.Code § 29–12A–1, *et seq.*, and against an officer of that department acting within the scope of his or her employment, with respect to the discretionary judgments, decisions, and actions of the officer.

In the instant case, there has been no assertion of the existence of an insurance contract that waives the defense of qualified immunity. In addition, it is not disputed that the West Virginia State Police is a State Agency that is not within the purview of the Governmental Tort Claims and Insurance Reform Act,[10] and that the individual State Troopers

---

8. The appellees did not allege in their complaints that their indictments and convictions were fraudulently obtained. Pursuant to Rule 9(b) of the *West Virginia Rules of Civil Procedure*, "[i]n all averments of fraud ... the circumstances constituting fraud ... shall be stated with particularity." This Court held in Syllabus Point 4 of *Croston v. Emax Oil Co., A Virginia Corp.*, 195 W.Va. 86, 464 S.E.2d 728 (1995):

The failure to plead particularly the circumstances constituting fraud not only inhibits full review of the substance of the claim of fraud by this Court on appeal from the grant of summary judgment; such failure also precludes the introduction of evidence supportive of any general allegation of fraud contained in the complaint had the case gone to trial, unless permitted by Rule 15(b), R.Civ.P. Rule 9(b), West Virginia Rules of Civil Procedure.

9. The circuit court specifically reasoned:

Regardless of this error [in this Court's precedent], the individual Defendants still are not

entitled to qualified immunity on the negligence claim. Negligence is based upon the basic concepts of duty, breach of that duty, and such breach as a proximate cause of the injury. How could any court ever conclude that the general concepts of negligence do not constitute clearly established law? Is the concept of negligence so novel that Defendants or any other reasonable official could not have known about it? Therefore, the Court holds specifically that qualified immunity is not available as a defense to Defendants in response to Plaintiffs' negligence claims.

10. The Tort Claims and Insurance Reform Act applies to political subdivisions. *See* W. Va. § 29–12A–1 (1986) (declaring that the Act's purpose is to limit the liability and provide immunity to "political subdivisions").

in this case are officers of that State agency. Finally, the complained of conduct of the appellants involve the appellants' investigation and arrests of the appellees. This conduct is within the scope of the individual appellants' employment. Finally, the complained of conduct involves discretionary judgments, decisions, and actions of the appellants.

We have carefully reviewed the appellees' arguments urging this Court to revisit our law on qualified immunity in claims of negligence, and we decline to do so. Therefore, we find pursuant to Syllabus Point 6 of *Clark v. Dunn* that the appellants have qualified immunity from claims of simple negligence under the facts of this case. Accordingly, we conclude that the circuit court's ruling that qualified immunity is not available to the appellants as a defense to the appellees' negligence claims is in error. Consequently, we reverse that ruling.[11]

## IV.

## CONCLUSION

For the reasons set forth above, we reverse the August 4, 2009 order of the Circuit Court of Kanawha County that denied the appellants' motion to dismiss the appellees' causes of action for retaliatory prosecution and negligence, and we remand for the entry of an order granting the appellants' motion to dismiss.[12]

Reverse and remanded.

---

11. Because we reverse the circuit court's order on the grounds above, we do not find it necessary to address the remaining assignment of error raised by the appellants.

12. In their complaints, the appellees included a third count for punitive damages. This Court's disposition with regard to the appellees' counts for retaliatory prosecution and negligence also disposes of the punitive damages count.