# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

**September 2019 Term**

_____

No. 18-0408

_____

FILED

**November 19, 2019**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**CABELL COUNTY COMMISSION and
BETH THOMPSON,
Defendants Below, Petitioners**

v.

**JOSEPH WHITT,
Plaintiff Below, Respondent**

_____

**Appeal from the Circuit Court of Cabell County
The Honorable Gregory L. Howard, Jr., Judge
Civil Action No. 16-C-741**

**REVERSED, IN PART,
AND REMANDED**

_____

**Submitted:  October 1, 2019
Filed:  November 19, 2019**

Wendy E. Greve, Esq.
Drannon L. Adkins, Esq.
Pullin, Fowler, Flanagan,
  Brown & Poe, PLLC
Charleston, West Virginia
Counsel for Petitioners

Kurt E. Entsminger, Esq.
Estep Entsminger Law
  Group PLLC
Raymond L. Harrell, Jr., Esq.
Flaherty Sensabaugh
  Bonasso PLLC
Charleston, West Virginia
Counsel for Respondent

**JUSTICE WORKMAN delivered the Opinion of the Court.**

**SYLLABUS BY THE COURT**

1.  "This Court reviews *de novo* the denial of a motion for summary judgment, where such a ruling is properly reviewable by this Court." Syl. Pt. 1, *Findley v. State Farm Mut. Auto. Ins. Co.,* 213 W. Va. 80, 576 S.E.2d 807 (2002).

2.  "'A circuit court's denial of summary judgment that is predicated on qualified immunity is an interlocutory ruling which is subject to immediate appeal under the "collateral order" doctrine.' Syl. Pt. 2, *Robinson v. Pack,* 223 W.Va. 828, 679 S.E.2d 660 (2009)." Syl. Pt. 2, *W. Va. Dep't of Health and Human Res. v. Payne*, 231 W. Va. 563, 746 S.E.2d 556 (2013).

3.  "West Virginia Code § 29-12A-5(b) provides that employees of political subdivisions are immune from personal tort liability unless '(1) [h]is or her acts or omissions were manifestly outside the scope of employment or official responsibilities; (2) [h]is or her acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; or (3) [l]iability is expressly imposed on the employee by a provision of this code.'" Syl. Pt. 1, *Beckley v. Crabtree*, 189 W. Va. 94, 428 S.E.2d 317 (1993).

4.  "In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether

i

the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight." Syl. Pt. 4, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996).

**Workman, Justice**:

On September 19, 2016, respondent, Joseph Whitt, was terminated from his employment as IT Director for Cabell County. The decision to terminate was made by respondent's employer, petitioner Cabell County Commission, and then carried out by petitioner Beth Thompson, Cabell County Administrator, who was accompanied by a Cabell County deputy sheriff when she went to respondent's office to inform him of his termination. The deputy then escorted respondent out of the courthouse and to the parking lot.

Thereafter, on or about November 23, 2016, respondent filed suit against both petitioners, alleging, inter alia, wrongful discharge under West Virginia's Whistle-Blower Law, W. Va. Code § 6C-1-1 to -8 (2019) and intentional infliction of emotional distress resulting from the manner of his discharge; subsequently, respondent amended his complaint to add a claim for false imprisonment arising from the manner of his discharge. This is an appeal from the circuit court's order of April 18, 2018, denying petitioner Thompson's motion for summary judgment on grounds of immunity and both petitioners' motions for summary judgment on the merits of the substantive claims in the respondent's complaint. For the reasons set forth in this Opinion, *infra*, only two of the issues raised on appeal will be discussed herein.

1

After careful review of the appendix record, the parties' briefs and oral arguments, and the applicable law, we reverse the circuit court's order insofar as it denied summary judgment to petitioner Thompson on the intentional infliction of emotional distress and false imprisonment claims, as we find that Ms. Thompson is immune from liability on those claims. We decline to consider the remaining issue raised by the petitioners—the court's denial of summary judgment on the whistleblower claim—as the issue does not fall within the collateral order doctrine and is not properly before this Court on a petition for extraordinary relief.

## I.  FACTS AND PROCEDURAL HISTORY

Prior to his dismissal on September 19, 2016, respondent Joseph Whitt had been employed for twelve years by the Cabell County Commission ("the Commission"), first as an IT specialist and then, following his promotion in July, 2015, as the Commission's IT Director. At the same time respondent was promoted, petitioner Beth Thompson ("Ms. Thompson") was hired as Cabell County Administrator and became respondent's immediate supervisor. The record indicates that during the fourteen months in which Ms. Thompson supervised respondent, there were no job problems or concerns raised about respondent's work.

On July 6, 2015, just days after respondent's appointment as IT Director, he sent Ms. Thompson an email which began, "Okay, so you wanted and [sic] explanation of what is backed up and what is not" on the county's computer systems. Respondent's

lengthy report informed Ms. Thompson, in relevant part, that backup capability on the systems ranged from nonexistent to "about 70 percent reliable. If the tape and recording heads on backup device is in good shape, about 90 percent. Problem is that tape could break at any time, including while it is being used for recovery." Subsequently, respondent presented Ms. Thompson with a proposal from Alpha Technologies that, in his words, "was aimed to remediate these serious backup deficiencies." It appears that Ms. Thompson presented the proposal to, or at least discussed it with, the Commission, which rejected it citing budgetary constraints.

Fourteen months later, on August 31, 2016, the AP1 server, which housed all of the Cabell County Clerk's financial data, crashed. The cause of the crash has never been ascertained. As a result of what the parties agree was this "catastrophic failure," nine months of electronic financial data including budget, payroll, and accounts payable, was lost, because the county's existing backup system was not working at the time of the crash. In this latter regard, no one knows how long the backup system was inoperable because it is undisputed that during his tenure as IT Director, respondent had never verified that data was actually being backed up.

Initially, there was some attempt by the Commission to place blame on the Cabell County Clerk, who was suing the Commission at that time (on unrelated grounds).[1]

---

[1] A letter to this effect was sent by the Commission's attorney to the Clerk's attorney.

3

At the same time, respondent stated to Ms. Thompson, and thereafter to each member of the Commission, that the loss of data was directly attributable to the Commission's failure to procure the additional backup capabilities that respondent had recommended. Finally, on September 16, 2016, Ms. Thompson convened a meeting of various elected county officials to address the issues arising from the systems crash; during the meeting, in response to officials' questions about why the crash had occurred, respondent again stated that "the reason the loss had occurred was because the Cabell County Commission had not procured additional data backup capabilities as he had recommended."[2]

After the meeting, Ms. Thompson telephoned each member of the Commission to advise them of what respondent had said. Two days later, in the evening of September 18, 2016 (a Sunday), or early in the morning of September 19, 2016 (a Monday), a decision was made to terminate respondent's employment. Ms. Thompson testified in her deposition that this decision was made by each Commissioner individually, by phone, and without deliberation among themselves or the convening of a formal meeting. At the beginning of the work day on September 19, 2016, Ms. Thompson first asked respondent for certain information such as passwords; it is undisputed that respondent was compliant with all requests. Later that day, she consulted with the Commission's attorney regarding the manner in which the termination should be carried

---

[2] Subsequently, respondent met individually with the Cabell County Sheriff and the Cabell County Assessor to show them a copy of his July 6, 2015, email to Ms. Thompson.

4

out and was advised to have a deputy accompany her to respondent's office and thereafter escort him from the building.[3] Thereafter, at approximately 4:00 p.m., Ms. Thompson and Deputy Robert McQuaid, who was on duty in the courthouse that day, went to respondent's office, at which time Ms. Thompson handed respondent a termination letter.[4] She then left, although the deputy stayed and, after respondent had gathered his personal belongings, accompanied respondent from his third floor office down to the first floor and out of the building to where his car was parked. It is undisputed that the deputy never touched respondent, although there is some dispute as to whether the two exchanged any words. It is also undisputed that the deputy was in uniform and armed.

As previously noted, on or about November 23, 2016, respondent filed suit against both petitioners, alleging, inter alia, wrongful discharge under West Virginia's Whistle-Blower Law, W. Va. Code § 6C-1-1 to -8, and intentional infliction of emotional distress resulting from the manner of his discharge; subsequently, respondent amended his

---

[3] There is a disputed factual issue as to whether Ms. Thompson in fact asked Deputy McQuaid to do anything other than accompany her to respondent's office. Both she and the deputy testified that he had simply taken it upon himself to escort respondent from the building; the respondent, however, points to other testimony and evidence from which a contradictory inference may reasonably be drawn. Whether or not this disputed fact is material to the ultimate disposition of the case on the merits, it is not material to the issue before us.

[4] "Dear Mr. Whitt, Please be advised that, effective immediately, your services are no longer needed with the Cabell County Commission. Please leave any county issued devices, badge, and key with me as you leave today. Thank you, Beth Thompson, County Administrator"

complaint to add a claim for false imprisonment arising from the manner of his discharge. Following extensive discovery, petitioners moved for summary judgment, not only on grounds of immunity but also on the merits of the individual causes of action.

On November 30, 2017, the circuit court entered its "Order Denying Defendants' Motion for Summary Judgment," ruling that the evidence was sufficient to support the plaintiff/respondent's claims of whistleblower violation, intentional infliction of emotional distress, and false imprisonment, and further finding that defendant/petitioner Thompson was neither immune from liability under the Governmental Tort Claims and Insurance Reform Act, W. Va. Code § 29-12A-1 to -18 (2018), nor entitled to qualified immunity. Thereafter, on April 6, 2018, the court entered its "Order Denying Plaintiff's Motion to Strike and Granting in Part and Denying in Part Defendants' Renewed and Supplemental Motion for Summary Judgment."[5] In this second order, the court concluded that the Commission was statutorily immune from respondent's claims of intentional infliction of emotional distress and false imprisonment, and this ruling has not been made the subject of a cross assignment of error by respondent in this appeal. The court declined to disturb its previous ruling that Ms. Thompson was not entitled to either statutory or

---

[5] The court found that "[b]ecause the factual record in [the] case has expanded significantly since the Court considered and decided Defendants' initial motion, and because Defendants have set forth new issues upon which they argue they are entitled to summary judgment, the Court concludes that under *Tolley* [*Tolley v. Carboline Co.*, 217 W. Va. 158, 617 S.E.2d 508 (2005)], Defendants' 'Renewed and Supplemental Motion for Summary Judgment' is appropriate for the Court's consideration."

qualified immunity on the intentional infliction of emotional distress and false arrest claims, finding that "[t]here is a material question of fact as to whether Thompson acted with malicious purpose, in bad faith, or in a wanton or reckless manner when terminating Plaintiff's employment, precluding summary judgment." Finally, the court found that respondent could not proceed on the whistleblower claim against Ms. Thompson in her individual capacity, although he could proceed against her in her capacity as Administrator for the Commission. Again, this ruling has not been made the subject of a cross assignment of error by respondent in this appeal.

## II. STANDARD OF REVIEW

"It is well-established that '[t]his Court reviews *de novo* the denial of a motion for summary judgment, where such a ruling is properly reviewable by this Court.' Syl. Pt. 1, *Findley v. State Farm Mut. Auto. Ins. Co.,* 213 W.Va. 80, 83, 576 S.E.2d 807, 810 (2002). Moreover, "'[a] circuit court's denial of summary judgment that is predicated on qualified immunity is an interlocutory ruling which is subject to immediate appeal under the "collateral order" doctrine.' Syl. Pt. 2, *Robinson v. Pack,* 223 W.Va. 828, 679 S.E.2d 660 (2009)." *W. Va. Dep't of Health & Res. v. Payne*, 231 W. Va. 563, 565, 746 S.E.2d 554, 556 (2013).

## III. DISCUSSION

The petitioners raise five assignments of error on appeal: (1) the circuit court erred in denying both petitioners' summary judgment motions on the whistleblower claims; (2) the circuit court erred in denying petitioner Thompson's motion for summary judgment on the intentional infliction of emotional distress and false imprisonment claims, as she is immune pursuant to W. Va. Code § 29-12A-1 to -18; (3) the circuit court erred in denying petitioner Thompson's motion for summary judgment on the intentional infliction of emotional distress claim; (4) the circuit court erred in denying petitioner Thompson's motion for summary judgment on the whistle-blower claim, as she has qualified immunity;[6] and (5) the circuit court erroneously considered respondent's "sham affidavit." We address only the first two issues, as our disposition thereof renders the remaining issues moot.

### A. Statutory Immunity

Petitioner Thompson argues that the court erred by denying her motion for summary judgment on the claims for intentional infliction of emotional distress and false imprisonment, contending that she is immune from liability pursuant to the Governmental Tort Claims and Insurance Reform Act, W. Va. Code §§ 29-12A-1 to -18. As this Court

---

[6] This argument heading is a misnomer, as the argument which petitioner makes in her brief addresses only her claim of entitlement to qualified immunity on the intentional infliction of emotional distress and false imprisonment claims.

explained in the seminal case of *O'Dell v. Town of Gauley Bridge*, 188 W. Va. 596, 600,

425 S.E.2d 551, 555 (1992):

> The Governmental Tort Claims and Insurance Reform Act (the "Tort Claims Act") grants broad, but not total, immunity from tort liability to political subdivisions of the State. The stated purposes of the Tort Claims Act are "to limit liability of political subdivisions and provide immunity to political subdivisions in certain instances and to regulate the costs and coverage of insurance available to political subdivisions for such liability." W.Va. Code, 29-12A-1. The Tort Claims Act was the result of legislative findings that political subdivisions of the State were unable to obtain affordable tort liability insurance coverage without reducing the quantity and quality of traditional governmental services. W.Va. Code, 29-12A-2. To remedy this situation, the legislature specified seventeen instances in which political subdivisions would have immunity from tort liability. W.Va. Code, 29-12-5(a).

(Footnote omitted)

In W. Va. Code § 29-12A-5(b), the legislature enumerated the circumstances

in which the allegedly tortious conduct of an entity or employee, otherwise immune, would

not fall within the statutory ambit:

> (b) An employee of a political subdivision is immune from liability unless one of the following applies:
>
> (1) His or her acts or omissions were manifestly outside the scope of employment or official responsibilities;
>
> (2) His or her acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; or
>
> (3) Liability is expressly imposed upon the employee by a provision of this code.

9

This Court first had occasion to review the statutory exceptions in depth in *Beckley v. Crabtree*, 189 W. Va. 94, 428 S.E.2d 317 (1993), holding in Syllabus Point 1 that

> West Virginia Code § 29-12A-5(b) provides that employees of political subdivisions are immune from personal tort liability unless "(1) [h]is or her acts or omissions were manifestly outside the scope of employment or official responsibilities; (2) [h]is or her acts or omissions were with malicious purpose, in bad faith, or in a wanton reckless manner; or (3) [l]iability is expressly imposed on the employee by a provision of this code."

At the outset, we note that respondent makes no claim, and cites no authority for the proposition, that liability is expressly imposed on Ms. Thompson by any statute, W. Va. Code § 29-12A-5(b)(3). Further, although there was some argument made on this point in the proceedings below, there is no question that Ms. Thompson's action in terminating the respondent's employment was an act taken within the scope of her employment and her official responsibilities, W. Va. Code § 29-12A-5(b)(1). It is undisputed that she, as County Administrator, was an employee of the County Commission, and that in terminating respondent's employment she was acting pursuant to the commissioners' directive. It is also undisputed that prior to carrying out the termination, she sought advice from the Commission's attorney as to how to do it, and that the advice she received was to have a deputy sheriff accompany her and then escort respondent from the courthouse.

10

In short, there is no evidence in the record that Ms. Thompson was "off on a lark" in having Deputy McQuaid accompany her to respondent's office, and thereafter in having him escort respondent from the courthouse to the parking lot.[7] In *Beckley*, the question before the Court was whether a county sheriff could be held liable for injuries sustained by a member of the West Virginia Department of Public Safety. During their joint arrest of an individual on charges of brandishing a weapon, the sheriff attempted to place a shotgun in the trunk of the car, and the shotgun discharged, injuring the trooper. We answered the question in the negative, holding that since the sheriff was an employee of the Wayne County Commission, a political subdivision pursuant to W. Va. Code § 29-12A-3(c),[8] he was immune from liability unless his acts fell within the exceptions language of § 29-12A-5(b). In that regard, we summarily concluded that "[t]he sheriff's actions in effectuating the arrest of a criminal suspect were clearly within the scope of his employment. Moreover, there is no indication that the sheriff committed any acts with malicious purpose, in bad faith, or in a wanton or reckless manner." *See also Mallamo v. Town of Rivesville*, 197 W. Va. 616, 477 S.E.2d 525 (1996) (municipal police chief was

---

[7] As noted *supra*, the evidence is disputed as to whether Ms. Thompson asked Deputy McQuaid to escort respondent out of the courthouse; she says she did not, although respondent points to circumstantial evidence from which a competing inference could reasonably be drawn. Because our review of the grant or denial of summary judgment is plenary, "this Court, like the circuit court, must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." *Assad v. Res-Care, Inc.*, 197 W. Va. 684, 687, 478 S.E.2d 357, 360 (1996).

[8] West Virginia Code § 29-12A-3(c) expressly lists "any county commission" as falling within the definition of a political subdivision that is immune under the Governmental Tort Claims and Insurance Reform Act.

11

not acting outside the scope of his employment or official responsibilities when he attempted to serve a capias at the home of an individual who lived beyond the corporate limits of the municipality, or when he entered the home against the advice of the prosecuting attorney).[9]

Therefore, we focus our attention on whether Ms. Thompson's termination of respondent's employment was done "with malicious purpose, in bad faith, or in a wanton reckless manner," W. Va. Code § 29-12A-5(b)(2). This is the crux of respondent's successful argument in the proceedings below; in its order denying Ms. Thompson's motion for summary judgment on grounds of statutory immunity, the court found that the circumstances of this case fell within the ambit of W. Va. Code § 5(b)(2) based *solely* on its conclusion "that a malic[ious purpose] could be inferred from the conduct of employing an armed deputy in effectuating the termination, and that the termination occurred while the public could access the Courthouse." We disagree.

---

[9] The Court in *Mallamo* did find that disputed issues of material fact precluded summary judgment as to whether the chief was acting within the scope of his employment, in light of evidence in the record from which a jury could find that after executing the capias, he conspired to conceal the truth of the events that followed (a shooting) and/or to distort the facts. In the instant case, there is no claim that Ms. Thompson conspired with anyone or attempted any sort of cover-up.

12

This is not a case involving some sort of "perp walk,"[10] although respondent attempts to paint that picture by emphasizing that the deputy was armed and in uniform, and that the courthouse was still open to the public at the time he was escorted to the parking lot. This argument ignores the obvious: that the sight of a uniformed, armed deputy *in a courthouse* wouldn't raise a single eyebrow, let alone cause bystanders to make any negative assumptions about an individual walking out of the courthouse with the deputy.

Respondent cites no case from this or any other jurisdiction in which tort liability was upheld based on the fact that an employee, following his or her termination, was escorted from the premises by security personnel, and our research has not uncovered any cases that support respondent's position. To the contrary, the case law that does exist uniformly rejects the notion that an employer's action in having a terminated employee escorted from the building can support a claim for outrage or for negligent or intentional infliction of emotional distress. *See, e.g., Toth v. Square D Co.*, 712 F. Supp. 1231, 1238 (D.S.C. 1989)(escorting a terminated employee from employer's premises does not provide a basis for either a negligent or intentional infliction of emotional distress claim);

---

[10] "The perp walk is the practice, common among some American law enforcement agencies, of 'walking' a criminal suspect before the press to be filmed." *Pilloried in the Press: Rethinking the Constitutional Status of the American Perp Walk*, 16 New Crim. L.R. 50 (2013). Although there could be a situation in which escorting a terminated employee from a place of business takes on the elements of a "perp walk," it can be said with certainty that no such situation is present in this case, where the respondent was quickly and quietly escorted out of the courthouse and the media was not present. Whether or not a "perp walk" could be actionable in a civil case is a question not before us, and we express no opinion thereon.

*Parsons v. United Techs. Corp., Sikorsky Aircraft Div,*, 700 A.2d 655, 667 (Conn. 1997) ("[i]t is not patently unreasonable for an employer to remove a discharged employee from its premises under a security escort"); *Seneca Knitting Mills Corp. v. Wilkes*, 502 N.Y.S.2d 844, 845 (N.Y.App.Div. 1986)(escorting a terminated employee from employer's premises is not outrageous); *Wornick Co. v. Casas*, 856 S.W.2d 732, 735 (Tex. 1993)(having terminated employee escorted from the premises by a security guard "could reasonably be expected to cause humiliation. In exercising its rights as an employer-at-will, however, RAFCO's conduct as a matter of law did not 'exceed all possible bounds of decency' and was not 'utterly intolerable in a civilized community'").

This Court is in accord with the reasoning of the above-cited authorities, and we find no principled basis on which to conclude that an act which would be insufficient to support either negligent or intentional infliction of emotional distress, is nonetheless sufficient to support a finding of malice under W. Va. Code § 29-12A-5(b)(2). We therefore find that after terminating respondent's employment, Ms. Thompson's action in having him escorted from the courthouse during regular business hours by a uniformed, armed deputy was insufficient as a matter of law to sustain a finding that said action was taken "with malicious purpose, in bad faith, or in a wanton reckless manner" under W. Va. Code § 29-12A-5(b)(2). Accordingly, Ms. Thompson is immune from liability on the intentional

infliction of emotional distress and false imprisonment claims, and the decision of the court below must be reversed.[11]

## B.    Claims Under the Whistle-Blower Law, W. Va. Code §§ 6C-1-1 to -8

The sole remaining issue on appeal is the petitioners' claim that the court erred in denying summary judgment as to respondent's whistleblower allegations in that (a) respondent's reports were not "good faith reports," (b) the reports were made as part of respondent's job duties, (c) respondent's reports were not reports of "waste," and (d) respondent's reports were not to an "appropriate authority." W. Va. Code § 6C-1-3(a). Petitioners contend that these issues, albeit interlocutory, are properly reviewable pursuant to the collateral order doctrine. We disagree.

This Court has held that "'Under W. Va. Code, 58-5-1 [1998], appeals only may be taken from final decisions of a circuit court. A case is final only when it terminates the litigation between the parties on the merits of the case and leaves nothing to be done

---

[11] In light of our decision that Ms. Thompson is entitled to immunity under the Governmental Tort Claims and Insurance Reform Act, W. Va. Code § 29-12A-1, *et seq.*, the issue of her entitlement to qualified immunity on the intentional tort claims is moot. We also conclude that the circuit court's denial of summary judgment on the intentional infliction of emotional distress claim is moot, as petitioner Thompson was the sole remaining defendant on that claim; and that the "sham affidavit" issue is moot, in that the alleged inconsistencies in the affidavit were relevant only to the intentional tort claims. Finally, as noted earlier in this Opinion, Ms. Thompson made no argument in her brief to support a claim that she was entitled to qualified immunity on the whistleblower claim, and we therefore will not address this issue. *See* W. Va. R. App. P. 10(c)(7).

but to enforce by execution what has been determined.' Syllabus point 3, *James M.B. v. Carolyn M.,* 193 W. Va. 289, 456 S.E.2d 16 (1995); *see also* Syl. Pt. 2, *C&O Motors, Inc. v. W. Va. Paving, Inc.,* 223 W. Va. 469, 677 S.E.2d 905 (2009); *James M. B. v. Carolyn M.,* 193 W. Va. 289, 292, 456 S.E.2d 16, 19 (1995) ("the 'rule of finality' is designed to prohibit 'piecemeal appellate review of trial court decisions which do not terminate the litigation[.]'") As is the case with most general rules, there are exceptions:

> The exception [to the rule of finality] referred to as the "collateral order" doctrine, which was established by the United States Supreme Court in *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 69 S. Ct. 1221, 93 L.Ed. 1528 (1949), may be applied to allow appeal of an interlocutory order when three factors are met: "An interlocutory order would be subject to appeal under [the collateral order] doctrine if it (1) conclusively determines the disputed controversy, (2) resolves an important issue completely separate from the merits of the action, and (3) is effectively unreviewable on appeal from a final judgment." *Durm v. Heck's, Inc.,* 184 W. Va. 562, 566 n. 2, 401 S.E.2d 908, 912 n. 2 (1991) (internal quotations and citation omitted). *See also Robinson v Pack,* 233 W. Va. 828, 679 S.E.2d 660 (applying three-part collateral order doctrine to circuit court's denial of summary judgment on issue of qualified immunity and finding order immediately appealable).

*Credit Acceptance Corp. v. Front,* 231 W. Va. 518, 523, 745 S.E.2d 556, 561 (2013).

We need not consider the first two prongs of this test, as it is beyond dispute that the instant matter fails the third prong: any error in the circuit court's denial of summary judgment is unquestionably correctable in a direct appeal. *See, e.g., Erie Ins. Co. v. Dolly,* 240 W. Va. 345, 355, 811 S.E.2d 875, 885 (2018) (collateral order doctrine

16

does not defeat the rule of finality where issue "may be reviewed pursuant to an appeal from the final judgment").

Petitioners contend that the whistleblower issue falls within the collateral order rule because, in their view, it is "predicated in part on qualified immunity" and thus falls within the reasoning of *Jarvis v. West Virginia State Police*, 227 W. Va. 472, 476, 711 S.E.2d 542, 546 (2010). Petitioners read *Jarvis* far too broadly. First, the whistleblower claims at issue are not predicated in whole or in part on immunity, nor are they "inextricably intertwined with the decision of the lower court to deny … immunity." *Henry v. Purnell*, 501 F.3d 374, 376 (4th Cir. 2007). Both factually and legally, the whistleblower claims are completely separate from the intentional torts; the former involve petitioners' subjective reasoning for terminating respondent's employment, while the latter involve the manner in which Ms. Thompson carried out the termination. Second, *Jarvis* did not establish some sort of bright-line rule permitting review of any interlocutory issues contained in the same order granting or denying an immunity issue. In *Jarvis*, the substantive issue reviewed was the plaintiff's failure to state a cognizable claim for retaliatory prosecution, an issue that was material to the resolution of both the substantive issue and the immunity issue in that the tort requires a showing that one "was criminally prosecuted in retaliation for exercising a right protected by the state or federal constitution." *See Roberson v. Mullins*, 29 F.3d 132, 136 (4th Cir. 1994) (when a court has jurisdiction over one interlocutory issue, it may also consider rulings that "substantially overlap."). Further, the substantive issue in *Jarvis* was an issue of first impression.

17

Here, as noted previously, there was no overlap between the whistleblower issues and the immunity issues, and therefore we find no basis on which this Court should exercise its discretion to review the whistleblower issues under the collateral order doctrine.

Alternatively, the petitioners argue that this Court should exercise its discretion to convert their appeal to a petition for extraordinary relief. *See, e.g., State ex rel. Register-Herald v. Canterbury*, 192 W. Va. 18, 449 S.E.2d 272 (1994) (converting appeal to prohibition); *State ex rel. Lloyd v. Zakaib*, 216 W. Va. 704, 798 S.E.2d 833 (2005) (converting prohibition to appeal); *GMS Mine Repair and Maintenance, Inc. v. Miklos*, 238 W. Va. 707, 798 S.E.2d 833 (2017) (converting appeal to prohibition). We decline to do so, as we conclude that the whistleblower claims at issue do not meet any of the factors set forth in Syllabus Point 4 of *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996):

> In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary

18

writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

First, in the event that further proceedings in this case result in a verdict against petitioners, all issues may be reviewed on direct appeal to this Court. Second, there is no prejudice to the petitioners and no "damage" other than the inconvenience and annoyance of a trial – certainly nothing unique to these petitioners and this case. Third, the circuit court's rulings, specifically, that there are disputed issues of material fact sufficient to take the whistleblower claims to the jury, are not clearly erroneous. Fourth, there is no suggestion that anything contained in the circuit court's order is an oft-repeated error or manifests persistent disregard for the law. Fifth, there are no new or important issues of first impression in this case.

Accordingly, we find that the whistleblower issues raised by petitioners are interlocutory issues that are not reviewable under the collateral order doctrine and not reviewable under a petition for writ of prohibition.

## IV. CONCLUSION

For the reasons set forth herein, we reverse the order of the Circuit Court of Cabell County insofar as it denied statutory immunity to petitioner Thompson on the claims for intentional infliction of emotional distress and false imprisonment. We decline to review the court's ruling denying summary judgment on the respondent's whistleblower

19

claims, and remand for further proceedings on these claims. All other issues raised in this appeal are moot.

Reversed, in part; remanded.